CASE 79—DEATH ACTION BY LEONARD BARNES' ADMINIS-
TRATOR AGAINST THE CHESAPEAKE & OHIO RAIL-
ROAD COMPANY.—March 12, 1909.

# Chesapeake & Ohio Ry. Co. v. Barnes' Admr

Appeal from Campbell Circuit Court.

A. S. BERRY and CHAS. W. YUNGBLUT, Successive
Judges.

Judgment for plaintiff.    Defendant appeals—Re-
versed.

1.   —Master and Servant—Railroads—Duty to Establish Rules—It
     is the duty of railroad companies to establish and publish rules
     for the operation of trains and the government and control of
     employes when in the discharge of their duties, and the failure
     to establish and enforce rules which will afford employes rea-
     sonable protection against the dangers of the employment
     will render a railroad company liable for injuries resulting
     therefrom.
2.   Master and Servant—Injury to Servant—Right of Recovery—
     Where an employe, himself free from negligence which would
     defeat a recovery, is injured or killed by a violation of the
     rules by a superior agent or officer of the master, the master
     is liable.
3.   Master and Servant—Rules for Employes—Injury to Servant—
     Where decedent, a member of a wrecking crew, when the train
     took a siding to allow another train to pass, left his train and
     stood on the track immediately in front of the tender of his
     own volition, and not in pursuance of any duty, he could not
     depend on the observance by the engineer of a rule requiring
     the bell to be rung before the engine was started, and there
     could be no recovery from the railroad company for his death
     caused by the engineer's starting the engine without ringing
     the bell.
4. Master and Servant—Injury to Servant—Assumption of Risk—

Chesapeake & Ohio Ry. Co. v. Barnes' Admr.

Scope of Employment.—The servant assumed the risk in taking such position, and the only duty the railroad company owed decedent was the duty to avoid injuring him after his position of peril was discovered.

GALVIN and GALVIN for appellants.

POINTS AND AUTHORITIES.

1. Error in Evidence—What is Res Gestae.—Vicksburg & M. R. R. v. O'Brien, 119 U. S. 99; L. & N. R. R. v. Webb, 99 Ky. 332, at 347; L. H. & St. L. Ry. Co. v Beauchamp, 108 Ky 47; Graddy v. W. U. Tel. Co., 19 Ky. Law Rep. 1455; McKelvey on Evidence (Hornbook Series), pp. 277-278; L. & N. R. R. v. Williamson, 29 Ky. Law Rep. 1165 at 1167, and cases cited; Owensboro City Ry. Co. v. Allen, 32 Ky. Law Rep. 1353.)

2. Error in Admission of Evidence. Not Corrected by the Court. (C. N. O. & T. P. v. Cook's Adm'r, 113 Ky. 161.)

3. Error in instructions. Measure of damages. (C. & O. v. Lang's Adm'r, 100 Ky. 221; L. & N. v. Kelley's Adm'r, 100 Ky. 421; Big Hill Coal Co. v. Abney's Admr., 30 Ky. Law Rep. 1305 to 1308; L. & N. v. McNary's Adm'r, 32 Ky. Law Rep. 1267, 1273; Whelan v. C. M. & St. P. Ry. Co., 85 Ia. 167; L. & N. v. Graham's Adm'r, 17 Ky. Law Rep. 1230; Penn. Ry. Co. v. Butler, 57 Pa. 335; Chicago R. R. Co. v. Bayfield, 37 Mich. 204; St. Louis v. S. F. Ry. Co., 56 Fed. 994; St. L. Etc. Ry. Co. v. Needham, 52 Fed. 371; Corleson v. Oregon, 28 Pac. Rep. 499; L. & N. v. Orr, 91 Ala. 548; Rose v. Des Moines Ry., 39 Ia. 246.)

4. This is not a case for punitive damages. (L. & N. v. McNary's Adm'r, 32 Ky. Law Rep. 1266, 1273; Southern Ry. Co. in Ky. v. Lee, 30 Ky. Law Rep. 1360; Southern Ry. Co. in Ky. v. Brewer, 32 Ky. Law Rep. 1374; I. C. Ry. Co. v. Lence, 30 Ky. Law Rep. 988; R. R. Co. v. Offett, 31 Ky. Law Rep. 936; L. & N. v. Mount, 31 Ky. Law Rep. 219.)

ARTHUR C. HALL and ARTHUR SHACKELFORD for appellee.

Notwithstanding the concession of counsel for appellants of the "unquestionable liability" of the engineer, Monteith, for the accident caused by his neglect they insist that his master should escape for alleged errors; but we contend that there were no errors in the trial of the case prejudicial to appellants or either of them, and that the law and facts of the case authorize a recovery

against both, and herewith submit the following authorities in support of our contention.

1. Punitive damages authorized by evidence. (C. N. O. & T. P. v. Cook, 23 Ky. Law Rep, 2413; Sou. Ry. v. Barr, 21 Ky. Law Rep. 1618; Sou. Ry. v. Otis, 25 Ky. Law Rep. 1687.)

2 Law and evidence of case authorize recovery against both appellants. (Conley v. C. N. O. & T. P., 11 Ky. Law Rep. 602; Shelby v. C. N. O. & T. P., 8 Ky. Law Rep. 927; (Tex.) H. E. & W. T. Ry. v. McHale, 105 S. W. 1149; L. & N. v. Simpson, 23 Ky. Law Rep. 1075; L. & N. v. Lowe, 25 Ky. Law Rep. 2317; L. & N. v. Tow, 23 Ky. Law Rep. 408; I. C. R. R. v. Mahan, 17 Ky. Law Rep. 1200; Barber v. C. & O. & T. P., 14 Ky. Law Rep. 869; I. C. Ry. v. Hays, 27 Ky. Law Rep. 91; Hammill v. L. & N., 14 Ky. Law Rep. 292; Daniels v. C. & O., 16 L. R. A. 383; Erickson v. St. P. & D., 5 L. R. A. 786; and notes to 43 L. R. A. 305; Conley v. C. N. O. & T. P., 11 Ky. Law Rep. 602; Shelby v. C. N. O. & T. P., 8 Ky. Law Rep. 928; H. E. & W. T. Ry. v. McHale, 105 S. W. (Tex.) 1149; L. & N. v. Simpson, 23 Ky. Law Rep. 1075; L. & N. v. Lowe, 25 Ky. Law Rep. 2317; L. & N. v. Tow, 23 Ky. Law Rep. 408; I. C. R. R. v. Mahan, 17 Ky. Law Rep. 1200; Barber v. C. N. O. & T. P., 14 Ky. Law Rep. 869; I. C. v. Hays, 27 Ky. Law Rep. 91; Hammil v. L. & N., 14 Ky. Law Rep. 292; Daniels v. C. & O. (W. Va.), 16 L. R. A. 383; Erickson v. St. P. & D. (Minn.), 5 L. R. A. 786; and notes to 43 L. R. A. 305.)

3. Judgment of $10,000 not excessive. (L. & N. v. Tucker, 23 Ky. Law Rep. 1931; L. & N. v. Millett, 20 Ky. Law Rep. 433; L. & N. v. Popp, 16 Ky. Law Rep. 369; L. & N. v. Brook, 7 Ky. Law Rep. 110; L. & N. v. Shivell, 13 Ky. Law Rep. 902; L. & N. v. Kelly, 19 Ky. Law Rep. 69; I. C. v. Stewart, 23 Ky. Law Rep. 637; C. & O. v. Dixon, 20 Ky. Law Rep. 792; C. & O. v. Judd, 20 Ky. Law Rep. 1978; U. W. H. Co. v. Prewit, 21 Ky. Law Rep. 67; Sou. Ry. v. Scanlon, 105 S. W. 152.)

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Leonard Barnes was a member of a wrecking crew of the Chesapeake & Ohio Railway Company, and in May, 1907, was sent out from Covington with a wrecking train to do some work in connection with a wreck on the road of appellant company. When

the wrecking train arrived at New Richmond, a station about 20 miles east of Covington, it received notice that the wreck had been cleared, and was ordered to return to Covington as the second section of a freight train designated as "first 77." When the order to return was received, the engine of the wrecking train was cut off from the other cars, and coupled on to the rear end of the train next to the caboose, and then backed towards Covington; the tender being in front of the engine. When the train arrived at Ross' Station, a place between New Richmond and Covington, it was required to go upon a side track to await the passing of some east-bound trains. The freight train known as "first 77" was on this siding when the wrecking train reached there, and it and the wrecking train remained on the siding for something over an hour. When an east-bound freight train passed, the main track was clear, and "first 77" proceeded to move out on its journey towards Covington. As soon as it started, and after it had gone a few feet, the engineer on the wrecking train proceeded to follow it in obedience to verbal orders previously given him by the conductor, who was at the depot several hundred yards distant, when the wrecking train started. The deceased, Barnes, and Peacock, and Scheidler, other members of the wrecking crew, had been sitting on the main track, near the engine of the wrecking train, but, when the east-bound freight approached, they left the main track and got on the siding immediately in front of the tender of the wrecking train, in the space between the tender of the wrecking engine and the caboose of "first 77," and were so standing when the wrecking engine started. Barnes and Peacock had their faces

towards the caboose of "first 77," while Scheidler was looking at the east-bound freight train as it passed on the main track. The conductor of the east-bound freight, who was standing on the caboose as this train passed the engine of the wrecking train, evidently saw the position of peril the men were placed in by the movement of the engine of the wrecking train, and halloed to Scheidler, who immediately jumped off of the siding track, thereby escaping injury, but Barnes and Peacock, who did not receive any warning or notice, did not move from their position on the siding track, and were knocked down, run over, and killed by the tender. Neither the engineer nor the fireman had any notice of the position of these three men, and did not learn of the accident until some person called their attention to it, when the engine was immediately stopped. The administrator of Barnes brought this action against the appellee company and Montieth, the engineeer, to recover damages for the death of his intestate. The negligence charged in the petition consisted in the fact that the engineer of the wrecking train started his engine without having received any signal to do so, and without giving any warning by sounding the whistle or ringing the bell of his intention to start, thus violating the rules of the company which provided that an engineer before starting his train should sound the whistle of the engine or ring the bell thereof as a warning and notice of his intention so to do. Upon a trial before a jury, a verdict was returned against the company and the engineer. We are asked to reverse the judgment entered upon the verdict for errors of the trial court in the admission of evidence, in the giving of instructions, because

the verdict is excessive, and for failure to give a per-emptory instruction.

The weight of the evidence conduces to show (1) that an hour or more prior to the accident the con-ductor of the wrecking train gave the engineer verbal orders to follow "first 77" as soon as it moved out, but there is no evidence that Barnes had any notice of information of this order; (2) that the engineer or fireman did not know that Barnes or the other men were on the side track immediately in front of the tender when the engine was started; (3) that neither the engineer nor fireman gave any notice or warning by ringing the bell or sounding the whistle of the intention to move the train; (4) that a rule of the company requires that "the engine bell must be rung when an engine is about to move." As we are of the opinion that the peremptory instruction requested by the company should have been given, we will consider the case upon the assumption that the rules of the company required that the engineer of the wrecking train should ring, or have his engine bell rung, before he started the train, and that, in violation of these rules, he started the engine without ringing the bell or sounding the whistle, or giving other notice of his intention. It must be further assumed, as there is no evidence to the contrary, that neither the engineer nor the fireman nor the conductor knew or had any reasonable grounds to believe that Barnes or the other men were standing on the side track when the engine started.

The question, therefore, to be determined, comes to this: Did the company and the engineer owe a duty to Barnes to ring the bell or sound the whistle before starting the train? If they did not, then the failure

to give this notice was not negligence as to them, and consequently there can be no recovery. If the rules of the company are intended for the protection of employes who are not at the time engaged in any service in connection with their employment, or, to put it in another way, if the employes have a right at all times to rely upon the fact that the rules of the company will be observed, although they may not at the time be engaged in the discharge of any duty for the company or within the scope of their employment, then the failure to ring the bell before starting the engine was negligence. On the other hand, if the rules are only intended for the use and protection of the employes when they are engaged in the performance of some duty within the scope of their employment, or that is made necessary by the exigencies of the occasion, or that is being carried out in obedience to the orders of a superior officer, it follows that Barnes was not entitled to depend upon the rules requiring that the bell should be rung before the engine was started, and hence there can be no recovery for his death, as at the particular time he was not engaed in any service for the company. He was merely standing on the track waiting for another train to pass, when no duty that he owed to the company or within the scope of his employment required him to be there.

It is a duty imposed upon railroad companies to establish and publish rules for the operation of trains and the government and control of employes when in the discharge of their duty for the purpose of promoting the safety of the employes and to protect them from the negligence of each other; and the failure to establish, promulgate, and enforce rules which, if

observed, will afford the employes reasonable protec-
tion against the dangers of the employment and avoid
exposing them to unnecessary risks, will render the
company liable in damages for accidents and injuries
occurring because of such failure.   1 Shearman &
Redfield on Negligence, section 202; Elliott on Rail-
roads, section 1280; Thompson on Negligence, sections
4135-4173; Nolan v. New York, N. H. & H. R. Co.,
70 Conn. 159, 39 Atl. 115, 43 L. R. A. 305, and extended
note  And when an employe, who is himself free from
negligence that would defeat a recovery, is injured or
killed by a violation by a superior agent or officer of
the company of the rules, an action to recover dam-
ages for the loss will lie.   The reason of this is that
the employes have the right to assume that their
superiors will observe the rules set down for their
guidance and government, and will not in violation
of these rules, or without regard to them, do anything
that will place other employes in peril.   In the man-
agement and operation of trains the employes are
called upon at all times of the day and night in the
performance of their duties to place themselves in
positions of great peril, where the slightest movement
of the train without notice will endanger limb as well
as life.   But they go confidently into these hazardous
places, relying upon the rules of the company to pro-
tect them, and feeling that the train will not be moved
until some warning or notice has been sounded in
accordance with the rules.   It has therefore come
to pass that absolute obedience to the rules estab-
lished for the movement of trains is of the first im-
portance.   It is indispensable to the safety of life
and protection of property that carriers engaged in
the hazardous business of transportation by modern

methods should devise and publish these rules, not only for the safety of the public, but for the protection of the employes. If it were not for the establishment and promulgation of these rules, and the fact that obedience to them is unconditionally exacted, and very generally accorded, employes engaged in the operation of trains would be constantly in danger from the innumerable situations in which the failure to observe rules would involve them. But these principles, so well recognized and generally enforced, do not reach the question we are dealing with. They are applicable to employes who are engaged in some service within the scope of their employment, or that are demanded by an emergency, or performed in obedience to the orders of a superior, and should not be extended so as to embrace employes who are not at the time engaged within the scope of their employment, or acting in obedience to the orders of a superior, or performing some duty that a sudden emergency has imposed. It follows from this that the deceased did not come under the protecting care of the rules, and therefore neither the engineer nor the company is liable in damages for his death, because a careful examination of the record fails to disclose any evidence that even conduces to show that Barnes in standing on the track in front of the tender was performing any duty that he owed to the company. He did not take the position in obedience to a request from any person. Nor did his employment require him to be there. The rule requiring the ringing of the bell before the engine started was not intended for the protection of persons on the track in places where their duties did not require them to be. If Barnes could claim the protection of the rule, so

could any other person who might be there.   Unless
the rules are confined to employes engaged in some
duty under the conditions hereinbefore set out, then
the rule requiring the ringing of the bell and all
other rules established by the company for the opera-
tion of its trains and the government and protection
of its employes must be held to be enacted for the
benefit of every person whether he be an employe or
not, because the fact that Barnes was an employe did
not afford him any protection when outside the line
of his duty.

Some point is made that the engineer moved the
train without a signal from the conductor so to do,
but the uncontradicted evidence is that the conductor
had received orders as to the movement of the train,
and reported these orders at least once to the engi-
neer, who thoroughly understood that he was to fol-
low "first 77" from Ross.   The fact that the orders
were given to the engineer by the conductor verbally,
and some hour or more before the train was moved at
Ross, is totally immaterial, as there is no doubt that
the train was moved in obedience to the orders, no
matter when they were given; but if the train had
not been moved in obedience to the orders, it would not
affect the question here involved, as Barnes had no
right in the position he was to rely upon the. orders.
He had no concern whatever in the orders given as to
the movement of the train.   The orders under which
the train was moved, or the observance or violation of
them, have no place in this case.

Unfortunately for Barnes he got on the track for
his own convenience or pleasure.   The passing train
does not help the case, as he was not required to get
on the siding and avoid it.   He could as well and as

easily have taken a position on the other side of the main track, or on the other side of the passing track, or he might have gone into the caboose of the wrecking train, where in truth his place of safety was. But, as he chose to stand on the passing track in front of the tender, he took the risk of the place. The only duty the company owed him was to avoid injury to him after his position of peril was discovered, and there is no evidence whatever to support this view. The rule of the company invoked and under which a recovery was had does not embrace this case. As this rule and its violation is the only negligence relied on in the petition, we feel obliged to say that the request of the defendant for a peremptory instruction should have been granted.

Wherefore the judgment is reversed, with directions for a new trial in conformity with this opinion.