## Barnes' Admr. v. Chesapeake & Ohio Railway Co. and Benjamin Montieth.

(Decided April 18, 1912.)

### Appeal from Campbell Circuit Court.

Railroads—Member Train Crew Subjecting Himself to Danger—Not in Place Where His Presence Should Have Been Anticipated—Former Opinion Law of Case.—Where a member of a wrecking crew put himself in a place of danger, knowing the train often started without signal, he subjected himself to danger which he knew was imminent, and under such circumstances it cannot be claimed for his estate that he was in a place where his presence should have been anticipated.

AUTHUR C. HALL and ARTHUR SHACKELFORD for appellant

GALVIN & GALVIN for appellee.

Opinion of the Court by Judge Winn—Affirming.

This case is here upon appeal from a judgment, upon peremptory instruction in defendants' favor. It was here upon a former appeal, 132 Ky., 728. The facts are there stated. It was held that upon the facts there a peremptory instruction in behalf of defendants should have been given by the trial court. Upon the return of the case the plaintiff filed an amended petition setting up, in substance, that it was the habit and practice of the members of the wrecking crew to be around any part of their train when it was standing, and that the defendants, knowing and recognizing this habit, would blow the whistle or ring the bell before starting—in other words, that the custom had become established as a rule. Without discussing the way in which rules must have their origin or be established, it suffices to say that as far as any witness upon this point would go was to say that sometimes the signal was given and sometimes it was

not. No witness testified to any established signalling custom or habit. The case, therefore, in this aspect, is not different from what it was upon the former appeal.

It is further urged for appellant that the custom or habit of the employes of the wrecking train to be anywhere about the train at their pleasure, coupled with defendants' knowledge of the custom, created a condition where their presence should have been anticipated and that, since their expected or probable presence should have been anticipated, it was negligent to move the train without prior warning. The former opinion held that Barnes, in getting on the track, did so for his own convenience or pleasure, in the discharge of no duty owed to the company, and that, in substance, the company owed him no obligation other than it would have owed a trespasser—to avoid injuring him after his peril was discovered. But the appellant's argument is that the custom (now first shown) of the wrecking crew to stand and loaf about the motionless train, even though in getting upon the track they trespassed, begot a situation like that in large towns, or at places where many daily cross the track, where the presence of a person, though wrongful, should be anticipated, and appropriate care taken. The evidence upon the detail of the custom is meagre. It goes no further than to show that the crew would sometimes leave the train, sometimes walk across the track, and sometimes stand alongside the engine. Appellant's own evidence disclosed (supra) that the train would sometimes start before signalling, and would sometimes signal before starting. There was no custom the one way or the other. The decedent necessarily shared the general knowledge of the crew as to the absence of any fixed law. When he put himself in the place of danger, knowing the train often started without signal, he subjected himself to a danger which he knew was imminent—a danger much more obvious to him than it would have been to some casual passerby, not connected or familiar with the fact that the train would start without signal. Under these conditions it can not be claimed for his estate that he was in a place where his presence should have been anticipated—certainly no more than that he should have anticipated that the train would start without signal.

The evidence on the second trial showed that Barnes' peril could have been discovered by the train operatives, had they looked; but that is not the measure. He

was in no different attitude at the time than that of a trespasser, as was held on the former appeal. As to him the decisive question was not whether they might have seen him, but whether they actually did see him, in peril. There is no evidence that they did. Creager's Admr. v. Illinois Central Ry. Co., 143 Ky., 543.

The plaintiff failed to make out a case under his amendment. The opinion in the former trial, therefore, was the law upon this.

Judgment affirmed.