## Illinois Central Railroad Company v. Carter.

(Decided June 13, 1913.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. **Master and Servant—Order of Superior—Effect of—Contributory Negligence.**—Where a wrecking crew bound for a wreck two and one-half miles distant is composed of twenty-five or thirty men, and it is necessary for some of them to find places on the engine

elsewhere than in the cab, an order by the foreman in charge to "ride the engine"authorizes one of their number to make a choice between riding alone on the cross-beam of the pilot or riding with others on the coal on the tender, also a position of danger, and therefore to take a position on the cross-beam, unless such position was so obviously dangerous that an ordinarily prudent person would have refused to take it.

2.   Same—Dangerous Place—Order of Superior—Obvious Danger.— Where the engineer of an engine bound for a wreck has been informed of the wreck and knows where it is, and the wreck is only two and one-half miles distant and the track between the engine and the wreck is closed, and no other collision is to be anticipated, it cannot be said as a matter of law that the position of one who, in obedience to the order of the foreman in charge to "ride the engine," securely fixes himself on the crossbeam of the pilot in preference to riding with other employees on the coal on the tender, is so obviously dangerous that a person of ordinary prudence would have refused to take it.

L. A. FAUREST, C. L. SIVLEY, and TRABUE, DOOLAN & COX for appellant.

O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries against the Illinois Central Railroad Company plaintiff, Shelby Carter, obtained a verdict and judgment for the sum of $8,000. The railroad company appeals.

The only error relied upon is the failure of the trial court to direct a verdict in favor of the defendant.

In the month of September, 1910, plaintiff was a laborer in the service of the railroad. He lived at Central City and was a member of an extra labor crew, whose foreman was John Nunnelly. On the night of September 20, 1910, there was a wreck on defendant's road at White Plains, a point fifty-one miles south of Central City. Nunnelly received orders to get together his men and other men for the purpose of taking them to the wreck. He got together two gangs of workmen, in all between twenty-five and thirty men. They were picked up at Central City by No. 103, a fast passenger train bound for Memphis. The men were also accompanied by Greer, another foreman, and by McNamara, the road supervisor. From Central City to Bakersport, a point two and one-half miles from the wreck, the men rode in the smoker. The train was in charge of Conductor Hansborough.

While there is a conflict in the evidence, plaintiff and some of his witnesses say that before reaching Bakersport, Hansborough told the men, Carter among them, that they would have to get out of the smoker at Bakersport and ride upon the engine to the wreck at White Plains. At Bakersport the passenger train was placed on a siding. As soon as this was done the men left the smoker and got out on the platform. There McNamara, the road supervisor, who was in charge of the men, repeated the order to ride on the engine. The mail car and baggage car were between the smoker and the engine. The night was dark and foggy. The men started forward in the direction of the engine. Before they had gone far, McNamara and Nunnelly changed their minds and the latter told the men to go in the baggage car instead of the engine. Plaintiff, who had gone forward to the engine, did not hear the order. Plaintiff claims that he knew that only a few of the men could get in the cab of the engine and that the rest of them would have to ride either on the tender, which was filled with coal, or on the pilot, the position which he subsequently took. Believing that it would be safer to ride on the pilot instead of on the tender, he took a position on the cross-beam back of the pilot. There was a bar, of an elevation of about three and one-half inches, which extended across the beam. Upon this bar were iron standards, which supported the boiler. He sat on the beam with his back against the left standard, and his legs over the iron bar, and his feet hanging down. He caught hold of the bar. While plaintiff was in this position the engine and two cars proceeded to the wreck. The engine ran into the wreck, and plaintiff was so badly injured that both of his legs had to be amputated. It is not insisted that the collision was not the result of the negligence of defendant's employees. It was due either to the failure of the employees of the wrecked train to properly protect that train, or to the engineer's lack of reasonable and proper caution in proceding to the wreck, of which he had been advised.

It is the contention of the defendant that even if it be conceded that an order was given by a superior officer to the men, including plaintiff, to ride on the engine, such an order cannot be fairly construed as a direction to ride on the pilot of the engine, and that plaintiff, by taking a position on the pilot instead of in the cab or on the tender, voluntarily chose a dangerous place, when a safer place was provided, and unnecessarily exposed himself to dan-

ger. It may be conceded that it has been held in a number of cases that the cross-beam or pilot is manifestly and obviously a most dangerous place on a forward moving engine, and one who voluntarily takes that position, when warned not to do so, or when his duties do not require him to do so, needlessly exposes himself to danger, and is not entitled to recover, where the railroad company furnishes other places where he can ride in safety. B. & P. R .Co. v. Jones, 95 U. S., 439; Warden v. L. & N. R. R. Co. (Ala.), 14 L. R. A., 552; Shannon's Admr. v. L. & N. R. R. Co., 70 S. W., 626; 26 Cyc., 1249; Thompson on Negligence, Sec. 5621; Atchison, Topeka & Santa Fe Railroad Co. v. Tindall (Kan.), 2 Am. Neg. Rep., 141. The facts here present a different case. While ordinarily a direction to ride on the engine might not authorize an employee to get on the cross-beam of the pilot, yet the order in question must be considered in the light of the circumstances. According to plaintiff's testimony there were twenty-five or thirty men in the crew. All of them could not have taken positions in the cab. It was necessary for some of them to ride on other parts of the engine. Some of them would have had to ride on the tender. The tender was full of coal. The tender rocks considerably; the coal is liable to roll about. If some of the men had to ride on the tender, plaintiff, being one of the younger men, had a right to consider the position that he would take on the engine from the standpoint of being required to ride on the tender. It cannot be said as a matter of law that a tender loaded with coal and crowded with men is a much less dangerous place to occupy than the cross-beam on the pilot when occupied by only one man. Each place is dangerous, and it is not a case of a choice between a dangerous and a safe place. Our conclusion is that the order to ride on the engine, considered in connection with the number of men who had to ride and the necessity for many of them to find other places than in the cab of the engine, fairly authorized the plaintiff to make a choice between riding alone on the cross-beam or riding with others on the tender, also a position of danger, and, therefore, to take a position on the cross-beam, unless such position was so obviously dangerous that an ordinarily prudent person would have refused to take it. While ordinarily it may be true that a position on the cross-beam or pilot of an engine is one of extreme danger, yet the fact that an employe has been injured while in such position is not always conclusive on the question of contributory

negligence. The question is, was the result an ordinary and likely consequence which should have been anticipated by a person of ordinary prudence? The engineer had been informed of the wreck. He knew where the wrecked train was. It was his duty in proceeding to the wreck to keep a lookout and to exercise ordinary care to discover the wreck and avoid a collision. The track between the engine and the wreck was closed. A rear end collision was just as probable as a front end collision. Plaintiff secured himself in such a way that he could not be jostled off. The engine had only two and one-half miles to go. In seating himself on the cross-beam he had a right to take these facts into consideration, and it cannot be said that he should have anticipated that the engineer, in going to the wreck, of which he had been informed and which was only two and one-half miles away, would have been so grossly negligent as to run his engine into the wreck. Considered in the light of these facts, we cannot say as a matter of law that plaintiff's position was so obviously dangerous that an ordinarily prudent person would have refused to take it. It was a question for the jury.

It follows that the peremptory instruction asked for by defendant was properly refused.

Judgment affirmed.