## Gatliff Coal Company v. Peace.

(Decided March 13, 1917.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Violation of Rules by Servant—Effect of.—Where a servant, in consequence of his violation of reasonable rules adopted by the master of which he has notice, receives injuries, the master will not be liable.

2. Master and Servant—Rules—Acquiescence of Master in Violation of by Servant.—The master cannot rely on rules adopted by him to defeat an action by an injured servant, although the injuries for which damages were sought to be recovered were sustained at a time when the servant was violating the rules, if

it appears that the servant habitually, and with the knowledge, consent or acquiescence of the master, disregarded the rules.

3. Master and Servant—Contributory Negligence.—Where a servant was injured while riding in a mine on a motor car by coming in contact with an anvil placed close to the track, he should not recover damages from the master when it appeared that he knew the location of the anvil and the danger of coming in contact with it and there was no excuse or reason assigned why he should have been riding in the manner he was at the time he was injured.

TYE, SILER & GATLIFF for appellant.

ROSE & POPE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The judgment in this case is less than five hundred dollars, and it is here on a motion asking that we grant an appeal and reverse the judgment. This we have concluded to do.

For the purpose of hauling coal out of its mine the appellant coal company uses motor cars which are about four or five feet wide and nine or ten feet long. At one end of the motor is the seat for the operator, and at the opposite end is another place where the brakeman may sit. The crew of each of these motor cars consists of a motorman and a brakeman. When the cars were not at work they were kept in a motor-house from which a switch ran through the shops to the main track. In the shops there were two anvils located close to the track, and the point or horn of these anvils, which projected towards the track, came within a few inches of passing motors. These anvils, which weighed about two hundred pounds each, were placed on blocks of wood about two feet high, had been in the same position for several years and the motor cars in the mine had passed in and out by them numbers of times.

The appellee, Peace, was employed as a brakeman on one of these motors, and on the day he received the injuries complained of, was engaged in oiling the motor before it started out of the motor-house, and continued this work after the motor started and until his leg was struck by the point or horn of one of the anvils as the motor car passed the point where they were located. His leg was caused to come in contact with the anvil by reason of the fact that in oiling the motor he was kneeling with his feet projecting over the sides of the motor in

such a manner as that when the motor passed the anvils, the point of one of them came in contact with his leg.

Turning now to the evidence of Peace for a more detailed account of the accident, and putting his evidence in narrative form, he said, in his evidence in chief, that he had been working as a brakeman for about two weeks before the accident. That he got on the motor with his back towards the side of the track on which the anvils were, and as the motor came through the shop, the horn of one of the anvils caught his leg. That he did not know how close the anvils were to the track, nor had any of the officers of the coal company ever called his attention to them. That there was a place on the end of the car where he could have ridden without letting his feet or body extend over the outside edge of the motor. That the deck of the motor was about two feet above the rail. That he had been working in the mine seven or eight years and the anvils had been in the same place during all the time he had worked there. That he had often gone to the anvils to have his tools sharpened. That he was on his knees on the motor, with his legs sticking out beyond the side of the car at the time of the accident and would not have been hit by the anvil if he had been standing up or sitting down at the place on the motor set apart for brakemen. That although he had ridden by the anvils on the motor two or three times a day, he had never given them any attention, nor had he ever made any complaint about the closeness of the anvils to the track. That the coal company had given him a little book containing printed rules, some of which he had read, but that he had lost the book.

At this point in his evidence he was handed a receipt signed by him in July, 1915, about a month before he was injured. The receipt set out that he had received a copy of the book of rules and had agreed to study it and become familiar with the rules and observe them in order that he might protect himself and his fellow employes from injury, damage or loss. At the same time he was handed, and there was put in evidence, a copy of the book of rules that had been given him, and he said that he had read those rules that applied to him as a brakeman or coupler. The rules which regulated his duties as brakeman or coupler were reasonable rules, and read as follows:

"Each motorman and brakeman shall keep a lookout as to the condition of the track over which he operates, including points of intersection, and any defects observed

shall be reported to the mine foreman." Another rule read: "The motorman and brakeman shall take careful note of conditions of hallways and at switch points, and any dangerous or unsafe places shall be reported to the mine foreman as soon as possible." Another read: "No one but motormen or brakemen shall be allowed to ride on cars at any time. Brakemen shall ride in empty cars on empty trips and on the bumper of the last car on loaded trips, and on trips running without cars the brakeman may ride if possible on the seat with motorman or on the rear bumper of car. No one shall ride on top of motors at any time within the mine." Another rule for the guidance of brakemen read: "Avoid riding between cars. The rear of the trip is the safest place. Do not kneel while riding on the motor. If your feet stick out, they are likely to get caught sooner or later."

On his re-direct examination he said that he had ridden on both the front and the side and the back end of the motor and he supposed the superintendent as well as the mine foreman had seen him so riding as he went by them, and that other brakemen rode in the same way. That when he got hurt he was riding on the motor in the same way and in the same place that he had seen other brakemen riding.

Herman Hall, the motorman, said that if Peace had been on the deck of the motor or at the end of the motor, he would not have been struck by the anvil, but that where he was sitting his feet were sticking out beyond the motor on the side next to the anvil.

Harry Ross, who had been working in the mine several years, testified as to the closeness of the points of the anvils to the passing cars and said that it was usual for the brakeman to ride any place he could on the motor, either on the end or side. That the anvils had been in the same place for four years and were in plain view where any person could see them.

On the evidence of these witnesses, the only ones introduced on the trial, we think the court should have taken the case from the jury. It has been written many times by this court that employers of labor have the right to adopt reasonable rules and regulations for the safety and protection of their employes, and that when rules of this nature have been adopted, an employe who is familiar with the rules cannot recover from the employer damages for injuries received at a time when he was violating the rules or damages for injuries that would

not have been received except for his violation of the rules. C., N. O. & T. P. Ry. Co. v. Lovell's Admr., 141 Ky. 249; C. & O. v. Barnes' Admr., 132 Ky. 728; L. & N. v. Scanlon, 22 Ky. L. R. 1400.

In addition to these general and well-settled principles in the law of master and servant respecting the duty of servants to observe reasonable rules promulgated by the master or suffer the consequences of their violation, it is also provided in sections 2738b and 2738c of the Kentucky Statutes that operators of coal mines shall adopt rules for the safety of persons employed about the mines. And it appears that the coal company, in accordance with the statutory direction, had adopted a little book of rules, a copy of which had been delivered to Peace.

Some question is made by counsel for Peace as to the competency of the book of rules adopted and introduced in evidence, based on the ground that it did not appear that the rules were in force at the time of the injury or that they had been approved by the chief inspector of mines, or that the coal company employed a sufficient number of men to bring it within the provisions of the mining laws of the state. If, however, we should assume that all these objections were well taken, it would not help the case of Peace, because, entirely independent of the mining laws of the state and the rules that operators are required to adopt and promulgate in accordance with these laws, the Gatliff Coal Company had the right as an employer of labor to adopt reasonable rules and regulations for the safety and protection of its employes, and the violation of rules so adopted and promulgated would be equally as effective to bar the right of action by an employe violating them as if the rules violated had been adopted and promulgated in accordance with the provisions of the statute.

It is further said that these rules should not be enforced against Peace because they were habitually violated by the miners with the knowledge and consent of the mine foreman and superintendent. We have written in several cases that the master cannot rely on rules adopted by him to defeat an action by an injured employe, although the injuries for which damages were sought to be recovered were sustained at a time when the employe was violating the rules, if it appeared that the employe habitually, and with the knowledge, consent, or acquiescence of the master, disregarded the rules. The reason for this is that if the master, after having adopted

rules for the government of his servants, sees proper to permit the servants to habitually violate them, his acquiescence in or approval of this violation will have the effect of abrogating the rules. C., N. O. & T. P. Ry. Co. v. Lovell's Admr., *supra*. But the evidence does not show such a habitual violation of the rules with the knowledge or consent or acquiescence of the mine foreman or superintendent as would work an abrogation of these rules.

But aside from the rules, and looking at the case as if no rules had been adopted or violated, it is very plain from the evidence that Peace was guilty of such contributory negligence as ought to bar his right of recovery. He knew exactly where the anvils were and how close to the track and passing motors they were located. Having this knowledge, and no reason being assigned or excuse given why he should have been riding on the motor with his feet sticking over the side at a place where he could not help knowing, if he had exercised any care at all, that his legs would have been hit by the anvils, we think it clear that the accident was caused entirely by his negligence.

Wherefore, the judgment is reversed, and if there is another trial and the evidence is substantially the same as appears in this record, the court will take the case from the jury.