## Illinois Central Railroad Company v. Skinner's Administratrix.

(Decided October 9, 1917.)

Appeal from McCracken Circuit Court.

1.  Trial—Credibility of Witnesses—Weight of Evidence—Question for Jury.—Although witnesses for plaintiff upon one of the issues involved, were impeached and undefended, and defendant's witnesses, upon the same issue, were more numerous and unim-

peached, their credibility, as well as the weight of the evidence, is for the jury.

2. Negligence—Proximate Cause.—The proximate cause of an injury is that which in a natural and continuous sequence, unbroken by any independent cause, produces the injury, and without which it would not have occurred; proximity as to time and place being unimportant except as showing proximity of causation.

3. Negligence—Independent Acts.—The fact that some other cause operated with the negligence of the defendant in producing the injury does not relieve defendant from liability. Defendant's original wrong, concurring with some other cause both as to time and place to produce the injury, makes defendant liable, even though the other cause is one for which he was not responsible.

4. Master and Servant—Injuries to Servant—Negligence—Question for Jury.—In an action for damages to an employe injured while attempting to board a moving train stumbled over a jack-block in a pathway between two railroad tracks, where the company maintained the pathway free from obstruction and its employes used it, it was for the jury to determine whether or not the presence of the jack-block between the tracks was negligence.

5. Trial—Instructions—Uncontradicted Facts.—The court should submit to the jury only such issues of fact as to which there is a contrariety of evidence, and an instruction that assumes an uncon-radicted fact is not objectionable.

6. Master and Servant—Injuries to Servant—Rules.—A rule of a railroad company for the government of its employes, which is by them habitually disregarded with the company's knowledge, does not absolve the company from liability for injuries to an employe sustained while violating the rule.

7. Master and Servant—Contributory Negligence—Damages.—The failure of an injured employe to choose a safe, rather than an unsafe, way to discharge his duties is contributory negligence and not assumed risk; and, under the Federal Employers' Liability Act, does not bar a recovery but diminishes the amount of damages, if any.

8. Appeal and Error—Request for Instructions.—A party may not complain of an instruction given, although vague upon the question, unless he offers a more specific one.

9. Appeal and Error—Damages—Apportionment.—While it is not proper, under the Federal Employers' Liability Act, to apportion the damages among the several dependents, an instruction so directing is not prejudicial, where there is no complaint that the sum awarded by the jury is excessive, either as a whole or as to any of the dependents, or that the award includes one not entitled to share in the benefits.

WHEELER & HUGHES, BLEWETT LEE and TRABUE, DOOLAN & COX for appellant.

JOHN K. HENDRICK, ANDREW M. NICHOLS and FRANK M. BURNS for appellee.

Opinion of the Court by Judge Clarke—Affirming.

This suit was brought by the widow of Lloyd B. Skinner, as administratrix, against the Illinois Central Railroad Company to recover damages for his death.

The deceased, at the time he was killed, and for a long time prior thereto, had been in the employ of the railroad company as car inspector in its yards at Paducah, and it was a part of his duties to do light repair work on cars, and to couple the cars and air hose thereon when trains were being made up in the yards. He was killed in the yards when he fell under a moving train while going from one part of the yards to another to couple the air hose on a train which was about to start on an interstate journey, and there is no dispute as to the fact that the railroad company was engaged in interstate commerce, and that the deceased was employed by it in such commerce at the time he came to his death. This being so, the action was brought under the Federal Employers' Liability Act.

One ground of negligence relied on in the petition was that the deceased, while walking in the space between the tracks that was set apart for the use of employes, and while attempting to board a cut of moving cars for the purpose of riding to the place where an air hose was to be coupled, stumbled over or came in contact with a jack-block that through the negligence of the company had been left in this space; that when he stumbled over this jack-block it broke loose his hand-hold on the grab iron of the car he was trying to get on, causing him to fall against a standing car on the adjacent track and to be thrown by the impact with the car under the wheels of the moving train.

Another ground of negligence charged was that the railroad company had located its tracks so close together as to make the place at which the deceased was killed unsafe and dangerous. Generally speaking, the negligence alleged was that the company failed to furnish the deceased with a reasonably safe place in which to do the work he was engaged in doing.

The answer of the company was a denial, coupled with pleas of contributory negligence and assumed risk.

On a trial of the case before a jury, there was a verdict for the administratrix, which will be later noticed more in detail, and from the judgment on the verdict the railroad company prosecutes this appeal.

The evidence is undisputed that the deceased was a capable, experienced railroad man, active, young and strong, and of good character and fine habits; that he left surviving him his widow and two children, aged respectively 14 and 11 years; that his wages averaged $75 a month; that his widow and children were wholly dependent on him for support, having no property or income of their own; nor is there any dispute about the fact that when he attempted to board a moving train in the yards, which was going about six miles an hour, for the purpose of riding on the train to the point where he was to couple the air hose, he fell and was thrown against a car standing on an adjacent track, and the force of the impact with this car threw him under the wheels of the moving train.

Robert Rief, a witness for the administratrix, testified that he was standing 40 or 50 feet away and saw the deceased try to catch with his left hand a grab iron on a car on the moving train; then saw him stumble and fall over against a standing car, from which place he was thrown under the moving train; that he stumbled over a jack-block, which is a piece of wood about 12 inches long, 6 inches thick and 10 inches wide, with a handle on it; that this jack-block was lying on the ground in the space between tracks one and two. He further said that immediately before the accident he was walking between tracks number one and two going in one direction and passed the deceased, who was going in the other direction; that just after he passed him he turned around and saw him stumble over the jack-block; that he first saw the jack-block that morning as he was walking up between the tracks just before he passed the deceased. He was not asked, nor did he say, how long the jack-block had been where he saw it, and according to his evidence he first saw it only a few moments before he saw the deceased stumble over it.

George Ellis testified that he saw the deceased, who was walking in the same direction the train was moving, when he attempted to board the train. He was then asked and answered these questions: "Q. What did he fall over? A. I did not see anything but a jack-block, and whether he stumbled over that or not, I do not know. Q. State where this jack-block was. A. Between number one and number two. Q. State if you know what caused him to fall. A. From what I saw as he caught the train, he did not get his hands on the first car and he tried to

catch the second car, and it threw him over on the car on number one track. Q. When did you first see that jack-block? A. When I went down there where he was killed I went in the same way he went in to catch the cars. Q. You did not see that until after he was dead? A. No, sir. Q. That was between the cars? A. Between the two tracks. Q. There were cars on both tracks? A. Yes, sir. Q. You didn't see him when he got killed? A. I did not see it when it killed him. He stumbled and fell. Q. Did he stumble? A. I don't know; that block was right there. Q. Do you know whether or not that man stumbled at all? A. I don't know whether he stumbled or not, but this block was right in there. Q. That jack-block you saw between number one and number two tracks, did you recognize that jack-block when you saw it? A. Yes, sir; I had used it. Q. Had you ever marked it in any way that you could tell it? A. I had a handle off of a box car door and I took it and put this handle on it. Q. And this was the jack-block you put the handle on? A. Yes, sir.''

John Stubblefield, another witness for the administratrix, said: ''As I was going down the main line and as I got near tracks number one and two, I saw a man run out of the shack with a wrench in his left hand, and run over towards the train that was moving north, and went running down by the side of this train and stumbled over a jack-block, and that threw him against the side of a standing car, and he fell back under the moving train. The train went about 20 or 30 feet and stopped and somebody run up and got him out. Q. With reference to tracks number one and two, where was this jack-block located? A. Between tracks one and two. Q. Which foot struck this jack-block? A. It seemed like his left foot. Q. When did you first see this block? A. His foot struck this block, and as I moved on down there I passed over this block. Q. As you went down there? A. As I went down there like anybody else would. Q. Where was the block lying? A. Between number one and two near the standing car, about 20 or 30 feet from the place where the deceased was killed.''

Robert Kimble, an employe of the company, said that on the day of the accident he was employed as an oiler by the railroad company and was also putting in brasses; that he carried brasses, which he got out of the shack, in a wheelbarrow. Q. Had you a jack-block with you? A. Yes, sir. Q. At the time he was killed wasn't you

putting in a brass and saw him stumble? A. Yes, sir, I saw him. Q. How far away were you? A. Four or five car lengths. Q. Was there a jack-block there? A. I had it in the wheelbarrow. Q. Was there any around there? A. No, sir. Q. Had you had any occasion to use them around there? A. I had them in the wheelbarrow. Q. How many did you have in your wheelbarrow? A. I don't know. I generally carry one jack-block and two wedges. Q. How many jack-blocks did you have in that little house (shack)? A. A jack-block and two wedges. Q. At times these jack-blocks were scattered along the track? A. We always keep them in that little house. Q. Why do you have so many? A. When one breaks we have another. Q. Do you never take but one out at a time? A. No, sir. Q. Did that jack-block you had that morning have a handle on it? A. No, sir. Q. Did any of them have handles on them? A. We have several with handles on them. Q. You had not used the jack-block? A. No, sir.''

On behalf of the railroad company Maurice Lewis, chief car inspector for the company at Paducah, said he was 30 or 60 feet away and saw the accident; that when he first saw the deceased that morning he was talking to W. R. Rowlett and C. M. Lewis, also employes of the company, and as he walked up to where they were, the deceased got up and started down between tracks number one and two; that the duties of the deceased required him to be about six or seven hundred feet from where he was when he started; that he saw deceased get killed; that there was nothing on the ground close to where he was killed, but that Robert Kimble had a jack-block where he was putting in brasses about a hundred feet north of where the deceased was killed. He said he did not see him stumble, as there was nothing over which he could stumble; that when he struck the standing car on track number one, he fell about 15 or 20 feet under the moving train.

W. R. Rowlett, also an employe of the company, said that he, the deceased and two or three other men were standing together when the deceased left to get on the moving train to go to the place where he was to adjust the air hose; that when he got up with the moving train he ran alongside of it and started to catch the first car and missed it, and then let the second car pass and caught the third car, and when he caught the third car he was thrown against the standing car on track number one

and then fell under the train; that there was no jack-block between the tracks at the place where the deceased was running between the tracks or at the place where he was killed; that when he got hold of the grab iron on the third car he did not get his feet off the ground before he fell against the standing car.

Ray Warren, another employe of the company, who saw the deceased get killed, did not see any jack-block or other obstruction over which a person could stumble in the space between the tracks.

C. M. Lewis, another employe of the company, was present with the deceased and others when the deceased started to get on the train. He testified that the space between the tracks was smooth and in good condition, and he did not see any jack-block; that when the deceased got hold of the grab iron on the third car, he did not get his foot off the ground before he was thrown against the standing car.

Nelson Shaw, another employe of the company, testified that he saw the deceased when he was killed, and went to him as soon as the train stopped, and did not see any jack-blocks.

Wallace, Walker and Bondurant, also employes of and witnesses for the railroad company, said that about ten minutes after the deceased was killed they went to the place and did not see any jack-blocks around.

Defendant introduced evidence that the reputation of plaintiff's witnesses, Rief, Ellis, and Stubblefield, for truth and veracity was bad. Numerous other witnesses were introduced upon matters relatively unimportant.

The main fact in issue was whether or not there was a jack-block in the space between the tracks at the place of the accident, and, for that reason, we have stated at some length the evidence upon that question. The defendant argues at some length, although admitting the rule that where upon a question of fact the evidence is conflicting its decision is for the jury, that the verdict of the jury here is flagrantly against the evidence in that the evidence of plaintiff's witnesses, whose reputations were attacked and not defended, rather than the defendant's unimpeached and more numerous witnesses, was accepted as to the presence of the jack-block between the tracks at the place of the accident; but clearly the credibility of the witnesses, as well as the weight of the evidence, was for the jury, and this court would not be

justified, under the authorities, in disturbing the verdict upon the ground that it is flagrantly against the evidence.

2. Defendant insists that its motion for a peremptory instruction should have been sustained upon the grounds, (a) that the evidence proves conclusively that the deceased's injuries and death were not the proximate result of his stumbling over the jack-block, even if its presence through defendant's negligence is assumed, (b) that there was no proof of negligence in its presence at the place of the accident, and defendant assumed the risk, (c) that the place of the accident was not a place where, in the discharge of his duties, deceased was required to be, and hence no duty devolved upon defendant to maintain that place in a reasonably safe condition, and (d) that deceased selected a dangerous and forbidden way in which to perform his duties rather than a safe and prescribed way. We will consider these propositions in the order named.

(a) All the evidence shows that, whether or not as a result of stumbling over the jack-block, the deceased was thrown from a moving train against the stationary car on an adjoining track with such force that his body rebounded under the moving train. Defendant insists that the stationary car, in the presence of which no negligence was proved, was the proximate cause of deceased's injuries; that it was an independent and intervening proximate cause, except for which the injuries would not have been sustained; and, therefore, a recovery was not warranted.

But clearly, this contention is not tenable. In L. & N. R. R. Co. v. Keiffer, 132 Ky. 419, proximate cause is thus defined: "The proximate cause of an accident is the immediate cause, or that without which it would not have happened. It is not the remote cause of the accident or the occasion of it."

In Shearman and Redfield on Negligence, sec. 26, quoted with approval in City of Louisville v. Hart's Admr., 143 Ky. 171, proximate cause is said to be: "The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new independent cause, produces that event, and without which that event would not have occurred. Proximity in point of time or space, however, is no part of the definition. That is of no importance, except as it may afford evidence for or against proximity of causation, that is, the proximate cause which is

nearest in the order of responsible causation.'' In the
same opinion, the court also quoted with approval Shear-
man and Redfield on Negligence, sections 39 and 346,
which are respectively as follows:

''Sec. 39. It is also agreed that if the negligence of
the defendant concurs with the other cause of the injury,
in point of time and place, or otherwise so directly con-
tributes to the plaintiff's damage that it is reasonably
certain that the other cause alone would not have sufficed
to produce it, the defendant is liable notwithstanding he
may not have anticipated or been bound to anticipate
the interference of the superior force which concurring
with his own negligence produced the damage.''

''Sec. 346. The general rule in all states is that
where two causes combine to produce an injury to a
traveler upon a highway, both of which are in their na-
ture proximate, the one being a culpable defect in the
highway, and the other some occurrence for which neither
party is responsible, the municipality is liable, provided
the injury would not have been sustained but for such
defect.''

Applying these principles to the facts of that case,
which are analogous to the facts here, this court reached
the conclusion that the negligence of the defendant in
that case was one of the proximate causes that resulted
in the death of the plaintiff's intestate, and, therefore,
an action would lie against the defendant.

The mere fact that some other cause operated with
the negligence of the defendant does not relieve it from
liability. The original wrong, concurring with some
other cause for which neither party is liable and both
causes operating proximately at the same time in produc-
ing the injury, makes the defendant liable, even though
the other cause was one for which the defendant was not
responsible. Both the jack-block and the stationary car
on the adjoining track were concurring causes in the
death of plaintiff's intestate, which could not have re-
sulted from either cause alone. The presence of the sta-
tionary car on an adjoining track was not an independ-
ent, intervening cause that would relieve the defendant
of the primary, producing cause, which, as found by the
jury, was the negligent presence of the jack-block in the
space between the tracks.

(b) It is insisted by counsel for defendant that, be-
cause there was no proof that the jack-block had been
in the space between the tracks for any length of time

prior to the accident, there was no evidence of negligence in its presence at the place of the accident. There was proof that the space between the two tracks was a cinder path for the use of the employes in the yard; that it was maintained by the company in a level, smooth condition, free from obstruction, and it was a question for the jury to decide whether or not, under the circumstances described in the proof, the presence of such an obstruction as the jack-block was negligence, and the court would not have been authorized to hold, as a matter of law, that it was not negligence, and if its presence there was negligence on the part of the company, the defendant, unaware of its presence, did not, of course, assume the risk. L. & N. R. R. Co. v. Vestal, 105 Ky. 461; L. & A. R. R. Co. v. Cox's Admr., 137 Ky. 388; C. & O. Ry. Co. v. DeAtley, 159 Ky. 687; *idem.*, 241 U. S. 310; C. & O. Ry. Co. v. Shaw, 168 Ky. 537.

(c) Counsel for the defendant are not warranted in their assumption that the place of the accident was not a place where, in the discharge of his duties, deceased was required to be, because it is shown by the evidence that deceased, and like employes, were required to be at such places in the yard as trains were being made up, in order to make and test the air connections on the trains, and that in going from one place to another in the yard in the discharge of their duties, they sometimes walked and sometimes rode on the switching cars. While it is shown that the train in question was being made up at a point within the yard about six hundred feet distant from the accident, it is not even claimed that that was the only point in the yard where deceased, in the discharge of his duties, was required to be. The proof shows that the deceased, just before the accident, came out of a small house, called a shack, in which tools were kept, holding in his hand a large monkey wrench, and that, at the time of the accident, was going, in a customary way and in the presence of his superior, from this tool house to the place where he was to perform his duties with reference to this particular train; and the only reasonable inference from this testimony is that, at the time of the accident, the deceased was proceeding from one part of the yard, where he had gone to procure tools needed in his service, to another point in the yard, where he was to perform that service. No other explanation of his presence at the place of the accident is offered. Under this evidence, the court certainly would not have

been warranted in holding, as a matter of law, that the deceased, at the time of the accident, was at a place where he was not required to be and at which the defendant did not owe him the duty of making the space between the tracks safe for his use. Upon the other hand, all the proof on the question tends to show that the deceased, at the time of the accident, was at a place where he had a right to be, and there is no proof whatever to the contrary; so that the court did not err in the instructions to the jury, as is insisted by appellant, in assuming that the deceased was at the place of the accident in the discharge of his duties, and that defendant owed him the duty of maintaining it in a reasonably safe condition, since the court should submit to the jury only such issues of fact about which there is a contrariety of evidence. Hobson on Instructions, sec. 29, note 63.

(d) The defendant attempted to prove that the company had a rule forbidding such employes as deceased from riding upon moving trains between points within the yard where they were required to work. But, it is conclusively shown that this rule was not enforced by the company. If the rule had been adopted, which was not satisfactorily shown, it was habitually disregarded by the employes with the company's knowledge, and hence did not absolve the defendant from liability. C. & O. Ry. Co. v. Barnes, 132 Ky. 728; Eagle Coal Co. v. Patrick's Admr., 161 Ky. 333.

Moreover, the decisions of this and other courts hold that the failure to choose the safe, instead of an unsafe, way, is contributory negligence and not assumed risk; and hence, under the Federal Employers' Liability Act, does not bar a recovery, but it is to be considered by the jury in diminution of the damages. I. C. R. R. Co. v. Carter, 154 Ky. 373, 157 S. W. 719; C. & O. Ry. Co. v. DeAtley, 159 Ky. 687; *Idem.,* 241 U. S. 310; L. & N. R. R. Co. v. Thomas' Admr., 170 Ky. 145, 185 S. W. 840; Stokes v. Ralpho, 187 Penn. St. 338, 40 Atl. 958; Portland Cement Co. v. Larnandola, 227 Fed. 823; 29 Cyc. 520, note 40.

We, therefore, conclude that the court did not err in refusing to give the peremptory instruction for defendant, nor was it error, under the evidence, to hold that at the place of the accident the safe place doctrine was applicable.

3. Another error, insisted upon by counsel for defendant, is that in the instruction on the measure of dam-

ages the recovery should have been limited to the present value of the loss of future earnings; but, while this is the proper criterion and the refusal to give such an offered instruction is reversible error, C. & O. Ry. Co. v. Kelly's Admrx., 241 U. S. 485, the defendant waives his right to object, by failure to offer such an instruction where estimation at the present worth is not obviated by the language of the instruction given. C. & O. Ry. Co. v. Shaw, 168 Ky. 537; N. C. & St. L. R. R. Co. v. Henry, 168 Ky. 453; Phoenix R. Co. v. Landis, 231 U. S. 578; Greenway v. Taylor County, 144 Iowa 332; Clark v. City of Cedar Rapids, 129 Iowa 358; L. & N. R. Co. v. Morris, 179 Ala. 239; Fedorawicz v. Citizens Electric Illuminating Co., 246 Pa. 141.

The instruction given in the instant case is correct, except that it does- not expressly limit the recovery to the present value of future payments by deceased to his dependents; nor does it exclude that idea, for it directs a return in such a sum as would "reasonably compensate" deceased's dependents for their loss, which easily might have been construed by the jury as being done by awarding only the present value of future payments; in fact, that is what it does mean; and the verdict returned may have been reached upon that idea, since deceased's proved earning capacity and life expectancy might have supported a larger verdict, although the loss was reduced to its present value. Under such circumstances, if defendant desired a more specific instruction upon the question of present value it should have offered such an instruction, and having failed to do so cannot now complain.

4. It is also insisted that it was error to direct the jury to apportion among decedent's dependents any damages awarded, and that, in apportioning to the widow and two minor children four thousand dollars each, the verdict is prejudicial, since their expectations of benefits were not equal, although it is not claimed that the award is excessive either as to any of the several dependents or as a whole. So we may dismiss the contention that the apportionment is prejudicial to defendant, even if it might . be assumed it was not entirely fair among the beneficiaries; and while it was held in Central Vermont Ry. v. White, 238 U. S., page 514, that it is not proper under the Employers' Liability Act to require the jury to apportion the damages, in which case the earlier case of Gulf, &c., Ry. Co. v. McGinnis, 228 U. S. 176, wherein

the damage was apportioned by the jury and the judgment affirmed, is explained, we are, nevertheless, by code provision, forbidden to order a reversal for an error not prejudicial to appellant's substantial rights; and, unless the gross sum awarded in the case at bar is excessive or includes one not entitled to share in the benefits, we cannot see how appellant is prejudiced by the apportionment. Since, as a matter of law, the widow and her minor children among whom the award was apportioned are entitled to share in the amount recovered, their inclusion in determining the gross amount was not error, and appellant is in nowise injured unless the gross amount is excessive, which is not even urged. There is, therefore, no basis for the contention that the apportionment by the jury was in any way prejudicial to appellant.

Wherefore, the judgment is affirmed.

The whole court sitting.