## Paducah Traction Company v. Weitlauf.

(Decided June 1, 1917.)

Appeal from McCracken Circuit Court.

1. Carriers—Carriage of Passengers.—A common carrier must use ordinary care to carry its passenger to his destination in a reasonable time; it is not responsible for delays which are caused by accidents that ordinary care could not guard against.

2. Carriers—Carriage of Passengers—Damages—Negligence.—While a common carrier is not an insurer as to the time when passengers will arrive at their destination, if a failure to reach the destination on schedule time is due to the negligence of the carrier, it is liable for damages which flow directly from the delay and which the carrier might reasonably have anticipated at the time of making the contract, which are usually to be measured by the passenger's loss of time and money expended by reason of the delay.

3. Carriers—Carriage of Passengers—Negligence.—As in other cases of actionable negligence, in order to hold the carrier liable for a failure to promptly carry its passenger to his destination, the particular act of negligence relied on as constituting the grounds of recovery must have been the proximate cause of the injury.

4. Damages—Proximate Cause.—Proximate cause is that which, in a natural and continuous sequence, unbroken by any new cause, produces an event, and without which the event would not have occurred.

5. Street Railroads—Passengers—Proximate Cause.—Where a street car carrying the plaintiff to her home stalled for want of sufficient electrical motive power, when within about three blocks of the plaintiff's destination, and she, voluntarily, left the car to walk home on the track, and was injured while crossing a trestle with which she was entirely familiar, instead of going by a safe route which was accessible and known to her, the stopping of the car was not the proximate cause of her injury, and the company was not liable therefor.

6. Trial—Peremptory Instructions.—A peremptory instruction for the defendant is proper when, after admitting every fact shown by the plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case.

WHEELER & HUGHES for appellant.

JOHN K. HENDRICK and CLAY & REED for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is an appeal by the Paducah Traction Company from a judgment of the McCracken circuit court awarding Minnie L. Weitlauf a judgment against it for $4,000.00, for personal injuries.

The facts are comparatively few, and are as follows:

On September 15, 1915, at about 6:30 o'clock p. m., Mrs. Weitlauf boarded one of appellant's Third street cars near the corner of Third and Norton streets, in the business district of Paducah, for the purpose of going to her home beyond the end of Jefferson street, about two miles distant. For some reason the car did not make its

schedule time; it not only traveled slowly, but the lights would go off and on, indicating an insufficient electrical power to adequately propel the car. At Broadway Mrs. Weitlauf was tranferred to a Broadway car, which she boarded about seven o'clock, and went to a point on Jefferson street, if extended, known as Mallory's station, near 29th street, where it stalled at about 7:35 p. m.

Mrs. Weitlauf lives on a country road, about a mile beyond the corporate limits of the city of Paducah. To reach her home she usually left the car at Thirty-first and Jefferson streets (Jones' Crossing) and walked north about a quarter or half a mile. Twenty-fifth street constitutes the corporate boundary of the city of Paducah; but there are roadways, some improved and some unimproved; some open but others not formally dedicated, lying between Twenty-fifth and Thirty-first streets. Jefferson street is open and improved to Twenty-fifth street, but from Twenty-fifth to Twenty-eighth street it is open and formally dedicated a hundred feet in width; but it is not improved by grading and graveling. From Twenty-eighth to Thirty-first street, Jefferson street is neither open nor dedicated, and the right of way of the appellant company passes between the fences on either side, without a walkway or improvement. Broadway road is graveled and improved to and beyond Thirty-first street. Jefferson street is immediately north of and one block from Broadway, running parallel with it. At Twenty-eighth street Broadway and Jefferson streets are intersected by a gravel road. The car line is double tracked from a point a few feet east of where the car stopped in front of Mallory's, to Twenty-eighth street, and from Mallory's to Twenty-eighth street there is a good cinder path between the tracks and on each side thereof.

The fair grounds extend along the north side of Jefferson street in this neighborhood, while the residence of Mr. Mallory, Mrs. Noble, and other citizens extend along the south side of Jefferson street, and back to Broadway.

Mr. Mallory lives at a point about where Twenty-ninth street would cross Jefferson street extended, if Twenty-ninth street was open; and, there is a board walk extending through the Mallory property to Broadway. The car line extends to Thirty-first street; and, as Mrs. Weitlauf lives some distance beyond Thirty-first street, she would alight from the car at Thirty-first street and walk the remaining distance. At Mallory's, the right of

way is narrow, and enclosed by fences on each side. There was a short trestle about the size of an ordinary cow-gap, in the track just beyond Mallory's station. It spanned a ditch about four or five feet deep, and was connected with a fence at either side.

After remaining in the car not exceeding five minutes, Mrs. Weitlauf left the car, for the purpose of walking home. As she left the car, according to her version, the conductor asked her if she was going to leave the car, to which she replied, "Yes, I have some medicine for my sick child and I am going to get off. I have been here about two hours; they will be worried about me and I will get off." She further stated that she left the car and went home, and that, of course, she had not really remained at Mallory's two hours as she stated to the motorman. According to the motorman's story, he said to her as she was leaving the car, "Lady, won't you remain on the car; perhaps we will go on in a few minutes"; whereupon she said, "No, I will go ahead," the motorman saying, "Well, be careful, there is a trestle up there."

A passenger on the car corroborated what the motorman said with reference to the trestle. This, however, is immaterial since Mrs. Weitlauf admitted she knew of the existence of the trestle a short distance in front of the car; that she had lived at her present abode for about three years, and had crossed the trestle many times before; that she knew all about it, and knew that it was not provided for people to walk on.

After leaving the car, Mrs. Weitlauf walked up Jefferson street towards her home, and, as she was crossing the trestle she missed her footing on the last step and fell, breaking her arm.

Upon her direct examination Mrs. Weitlauf said:

"I got off the car and went down the trestle, and got over all but the last step safely, and missed my footing and fell with my arm under me."

Upon cross-examination she further said:

"Q. How long have you lived where you now live? A. Three years. Q. Had you ever walked down that track before this occurrence? A. Yes, sir. Q. You knew there was a trestle there? A. Yes, sir. Q. It was dark, you say? A. Yes, sir. Q. You knew that the trestle was up off the ground? A. I knew it was off the ground; I thought I was safely over it. Q. You knew it was provided for running cars over? A. I knew that, but it was the

only way to get home.  Q. You knew it was not provided for people to walk over? A. I certainly did."

As above stated, Broadway is a constructed gravel road running parallel with Jefferson street; there is a board walkway extending through Mallory's yard to Broadway; and Twenty-eighth is a gravel road crossing both Broadway and Jefferson streets.  Although Jefferson street was not constructed beyond Twenty-fifth street, there was a cinder path extending from Mallory station back to the gravel road at Twenty-eighth street.

Mrs. Weitlauf was acquainted with Mrs. Mallory, and knew of the existence of the walkway through the Mallory yard.  Mrs. Weitlauf had, therefore, two safe ways by which she could have gone home: first, she could have gone through the Mallory grounds to Broadway and thence out Broadway to Thirty-second street; or, secondly, she could have gone down the cinder path to the gravel road at Twenty-eighth street, thence over to Broadway and out Broadway to Thirty-second street. She had, however, another and more dangerous way, of walking straight ahead down the railroad track and across the trestle, which was perhaps three squares shorter than the longest of the safe ways.  She voluntarily took the dangerous path, and was injured.

In her petition, she alleges that she was compelled to leave the car; and, that it was necessary for her to cross, and she attempted to cross, the trestle over the drain or ditch on the right of way, and thereby was injured.  The petition alleged the defective construction of the trestle; but no proof was offered to sustain the allegation.

The answer traversed the charge of negligence upon the part of the defendant; and, in a second paragraph, it affirmatively alleged that Mrs. Weitlauf voluntarily left the car at a point not provided for receiving or discharging passengers, and of her own volition walked down the right of way, where she had no right to be, and was injured while crossing the trestle, thereby causing her injuries by her own negligence.

At the close of plaintiff's proof, as well as at the close of all the testimony, the defendant asked that the jury be peremptorily instructed to find for the defendant; but this motion was overruled, and the trial proceeded, with the result above indicated.

In addition to the above facts, there was evidence tending to show that the bad quality of the coal used in

generating the electric power used by the street car company caused the car to stop; and, it is contended by the appellee that the company was guilty of negligence, in that further respect. However, under our view of the case, we do not think it necessary to discuss that feature, since the plaintiff can only recover in case her injury was the proximate result of the negligence of the defendant. Although the company may have been negligent in using bad and dirty coal in its furnace, it is not liable if Mrs. Weitlauf's injuries were caused by her own negligence. And, although the cause of the car stopping was probably the dirty and defective coal, the stopping of the car was not the proximate cause of appellee's injury.

Mrs. Weitlauf was in no way compelled to leave the car; no indignity was offered her; she received no physical injury at the hands of the company; she was not asked to leave the car; on the contrary, the motorman requested her to remain on the car, suggesting that probably the car would go forward in a few minutes. We have, therefore, the case of a passenger voluntarily leaving the car before it reaches the passenger's destination, and while passing along the track and over a trestle which she knows exists, she steps "short" and falls over the culvert, receiving her injuries. Under these facts, it is difficult to understand upon what theory Mrs. Weitlauf can recover damages from the company for her injuries.

A common carrier must use ordinary care to carry its passenger to his destination in a reasonable time; it is not responsible for delays which are caused by accidents that ordinary care may not guard against. Southern Ry. Co. v. Miller, 129 Ky. 102. And, while a common carrier is not an insurer as to the time when passengers will arrive at their destination, if a failure to reach the destination on schedule time is due to the negligence of the carrier, it is liable only for such damages as flow directly from the delay and which the carrier might reasonably have anticipated at the time of making the contract. They are usually to be measured by the passenger's loss of time and money expended by reason of the delay. L. & N. R. R. Co. v. Spurling, 160 Ky. 819, Ann. Cas. 1916A 487; Central of Georgia R. Co. v. Wallace, 141 Ga. 51, Ann. Cas. 1915A 1076, with note; Morrison v. I. C. R. R. Co., 165 Ill. App. 415; Hayes v. Wabash R. R. Co., 163 Mich. 174, 31 L. R. A (N. S.) 229; Morris v. Colorado Midland R. R. Co., 48 Colo. 147, 20 Ann. Cas. 1006, 139

Am. St. Rep. 268, 31 L. R. A. (N. S) 1106; Leclaire v. Tacoma R. R. Co., 62 Wash. 157.

Admitting for the argument that negligence upon the part of the company was shown, there remains the all-important question: What was the proximate cause of Mrs Weitlauf's injuries?

The rule is stated as follows, in 10 C. J., p. 978:

"As in other cases of actionable negligence, in order to hold the carrier liable, its wrongful act or omission constituting negligence must have been the direct and proximate cause of the injury complained of, and if there were other possible causes, the question is whether the negligent construction, maintenance, or operation of the premises, roadbed, machinery, or appliances was the efficient and dominant cause producing the injury. The particular act of negligence relied on as constituting the grounds of recovery must have been the proximate cause of the injury. If the carrier or its employes were negligent, and the injury resulted mediately or immediately from such negligence, then the carrier is liable, although there may have been an intervening cause not chargeable to the carrier's fault, except in cases where, although the carrier is negligent, there is an intervening independent cause for the injury, not the result of the carrier's negligence or other wrong; in such case the carrier is not liable. Thus, where the passenger is not given a reasonable opportunity to alight, but is carried past his destination or the proper place for alighting, the carrier will not be liable for injury suffered by the passenger after alighting without injury if the subsequent injury is not such as could have been anticipated as the result of being carried beyond the place for alighting, and is not in itself due to any fault of the carrier, although, if the place or circumstances are not proper for the alighting of the passenger, the carrier will be liable for injuries naturally resulting from his getting off there."

Proximate cause may be defined as that which, in a natural and continuous sequence, unbroken by any new cause, produces an event, and without which the event would not have occurred.

The proximate cause is that which is nearest in the order of responsible causation. Butcher v. R. R. Co., 37 W. Va. 180, 18 L. R. A. 519; Lutz v. R. R. Co., 6 N. H. 496, 16 L. R. A. 819. It is that which stands next in causation to the effect, not necessarily in time or space, but in causal relation. Pullman P. C. Co. v. Laack, 143

Ill. 242, 18 L. R. A. 215; Claflin v. Houseman, 93 U. S. 130.

In East Tennessee, &c. R. Co. v. Lockhart, 79 Ala. 315, the rule is well stated, as follows:

"Negligence and wrongful conduct having been established, the general rule is, that the defendant is liable for the natural and proximate damages resulting therefrom—such consequences as might probably ensue in the natural and ordinary course of events. Though the defendant is not responsible for any events produced by independent intervening circumstances which have no connection with the primary act, if the intervening agencies are put in operation by the wrongful act of the defendant, the injuries directly produced by such agencies are proximate consequences of the primary cause, though they may not have been contemplated or foreseen. The relation of cause and effect between the tortious act and the intervening agencies being shown, the same relation between the primary wrong and the subsequent injuries is also established; the first wrongful act operating through a succession of circumstances, each connected with, and originated by the next preceding."

In the City of Louisville v. Hart's Admr., 143 Ky. 171, this court approved the definition of Judge Cooley, that proximate cause must be the legitimate sequence of the thing amiss. In other words, the law always refers the injury to the proximate, not the remote cause.

A more extended definition or explanation of proximate cause is found in Milwaukee & St. Paul R. R. Co. v. Kellogg, 94 U. S. 469, as follows:

"The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

In support of the ruling of the lower court, appellee relies upon L. & N. R. R. Co. v. Keller, 104 Ky. 769; K.

& I. Bridge & Railroad Co. v. Buckler, 125 Ky. 24, 8 L. R. A. (N. S.) 555; Southern Railway in Kentucky v. Miller, 129 Ky. 98; Louisville & Nashville Railway & Lighting Co. v. Cromley, 169 Ky. 11, and other cases of that character.

None of those cases, however, are applicable under the facts of this case. In the Keller case the plaintiff was, at the end of her journey, put off a train in a storm, with the way to the depot obstructed so as to prevent her reaching shelter from the rain and hail, thus showing negligence upon the part of the company, and injury as its natural and proximate result.

In the Miller case, he was required to spend the night in the caboose of a freight car, which was so negligently heated as to expose Miller to the inclement weather, thereby causing his illness. In allowing him to recover, the court said the immediate cause of Miller's illness was his exposure during the night in the caboose; and unquestionably his exposure and consequent illness was the natural and reasonable consequence of the railway company's failure to transport him to his destination, within a reasonable time.

In the Buckler case, the plaintiff was carried beyond his station, and was directed by the conductor to alight and walk back along the track to a certain light and then leave the track. In following these instructions, Buckler was injured. He was allowed to recover because his injuries were directly caused by the negligence of the company in carrying him beyond his station, and, in directing him to retrace his steps over an unknown and dangerous path.

In the Cromley case the plaintiff was required to leave the car at night and before the completion of her journey; these were the elements upon which her recovery was based.

But, in the case before us, Mrs. Weitlauf was not carried beyond her station; she was not directed or asked to leave the car; and no directions were given her in any way; upon the contrary, the motorman requested her to remain upon the car.

Furthermore, when she left the car, instead of taking a safe route, which was open and known to her, she took an unsafe route, with which she was well acquainted, and thereby invited the accident which befell her.

The only respect in which the company failed to carry out its contract was to carry her to her destination; but

that did not constitute a tort. Mrs. Weitlauf having suffered no personal injury, insult or indignity at the hands of the company, or its agents, her action was founded in contract, not in tort. Spurling case, *supra;* 4 R. C. L., p. 1090.

In order for the company to be liable, Mrs. Weitlauf's injuries must have been the direct and proximate result of negligence upon the part of the company; but, instead of that being true, it cannot be doubted that her injuries were the direct result of her own negligence. Under the well-established rule that a peremptory instruction is proper when, after admitting every fact shown by the plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom the plaintiff has failed to establish her case, the defendant's motion for a directed verdict should have been sustained. Southern Ry. v. Goddard, 121 Ky. 567.

Judgment reversed.