## Nunan v. Bennett.

(Decided June 6, 1919.)

### Appeal from Clark Circuit Court.

1. Negligence—Actionable Negligence—Proximate Cause.—Negligence in order to be actionable must be the proximate cause of the injury, and the proximate cause of an injury is that which in a natural and continuous sequence, unbroken by any independent cause, produces the injury and without which it would not have occurred; but proximity as to time and place is unimportant except as evidence showing proximity of causation, and unless the injury results directly and not remotely from the negligent act complained of the one guilty of it must have in the exercise of ordinary prudence reasonably foreseen or anticipated that the result would have been the natural and probable consequence of his act.

2. Landlord and Tenant—Damage to Tenant's Goods—Negligence—Proximate Cause.—A landlord to prevent the pipes in his three story building from freezing turned off the water at night with the

knowledge and consent of the tenant on the ground floor and the next morning between eight and nine o'clock turned the water on, because of which the store room below occupied by plaintiff was flooded and goods therein damaged from water flowing through faucets which the tenant on the second floor had negligently left open. Held that the damage to plaintiff's goods was not the proximate result of the act of the landlord in either turning off or turning on the water, since in doing the latter act it was not incumbent upon him to foresee or anticipate that any tenant above plaintiff would negligently leave the faucets open in the apartments under his control and occupied by him.

J M. BENTON for appellant.

R. C. OLDHAM and HAYS & HAYS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellant and defendant below, John F. Nunan, was the owner of a three story business building in the city of Winchester, Kentucky, with a basement. The ground floor was occupied by appellee and plaintiff below as a millinery store. The second and third stories were fitted up as apartments and occupied by other tenants as dwellings, which fact was known by plaintiff at the time she rented the store room from defendant.

The main water pipes conveying water for all parts of the building entered the basement and separate pipes furnished each story with water. The cut-off of the main pipe running into the building was located in that part of the basement rented by plaintiff in connection with the store room. In the rental contract plaintiff stipulated and bound herself to take care of the plumbing of the leased building and to cut off the water "at any time it may become necessary to do so to prevent freezing," and to allow the tenants occupying the other two stories access to the basement for the purpose of cutting off the water from their apartments when it was necessary for any purpose to do so, and that if she should fail to do as agreed she would be liable for the damage to the plumbing occasioned by such failure.

A short while prior to February 3, 1917, plaintiff made complaint to defendant about some defects in the plumbing in the stories above her because of which there had been a slight leakage in some part of the premises rented by her, and it was then suggested by the defend-

ant that inasmuch as the weather was extremely cold it would be best to turn the water off throughout the building for the night, and we think the evidence is sufficient to show that plaintiff agreed to this. At any rate she knew that defendant was going to have it done and consented thereto. Accordingly between five and seven o'clock defendant had his servant to go into the basement and turn the water off. The apartment on the second floor was occupied by a man by the name of Agee, who was not at home at the time but returned about ten o'clock that night and finding the water turned off he left some of his faucets or other apertures of the pipes in his premises open so as to permit the water when turned on to run out upon his floor. On the next morning between eight-thirty and nine o'clock, under instructions from defendant, his servant turned the water on throughout the building from the basement and it ran out through the unclosed opening in the second story and leaked through the floor and ceiling of the first story and damaged the goods of plaintiff, to recover for which she filed this suit, and upon trial recovered a judgment for $2,250.00, to reverse which defendant prosecutes this appeal.

Agee was made a defendant, but under the instructions of the court a verdict was returned in his favor, upon which judgment was rendered dismissing the petition as to him and that judgment is not here for review.

The negligence charged in the petition was that defendant had wrongfully and negligently gone into the basement and turned the water off and in the same way caused it to be turned on the next morning and the injury sued for was the proximate result of such negligence.

Defendant's answer denied the negligence as well as the amount of damages claimed. A number of alleged errors are relied on to reverse the judgment, but we deem it unnecessary to notice, and we do not determine on this appeal, any of them except the one complaining of the refusal of the court to direct a verdict in defendant's favor upon the ground that the negligence complained of, if any, was not the proximate cause of the damage sued for, i. e., that the injury to plaintiff's goods was too far removed from the acts of defendant complained of to make it the proximate result of such acts.

It will no doubt be conceded that to entitle one to recover from another upon the ground of negligence the latter must have (1) failed to exercise the proper care

in the discharge of some duty which he owed the former; (2) that damages must have resulted from such failure; and (3) that such damages must have been the proximate result of the negligent acts complained of. Unless each of these elements coexist there can be no recovery. Conceding then for the purposes of this case that the record presents facts sufficient to authorize a finding in favor of plaintiff on the first two essentials it remains to be seen whether the third one under the testimony may be said to exist.

At the outset it is admitted that the leakage complained of and which produced the damages sued for was not caused by any bursting of pipes or defective plumbing, so that the general principles of law as between landlord and tenant with reference to such matters have no application to the facts of this case. Nor is it insisted that it was any part of the duty of defendant to see to it that the upper tenants in his premises would keep the faucets and plumbing in their apartments closed so as to prevent any leaking upon the tenant below. On the contrary the law is well settled that an upper tenant who negligently causes water to flow upon his neighbor below is liable for the damages produced, and especially so if the plumbing in his apartment was under his exclusive control, as was true with reference to the tenants on the second and third floors of defendant's building in this case. So that if plaintiff's damage was produced by any such negligent act of a tenant above her there could be no escape from the conclusion that such negligent act was the direct producing and immediate cause of the injury. But whether it was such an independent and intervening cause as to relieve the alleged negligence of defendant in turning on the water from being the proximate cause of the injury is the question to be determined.

Courts have experienced great difficulty in defining with exact precision the term "proximate cause." This court, in the City of Louisville v. Hart's Admr., 143 Ky. 171, approved the definition of Judge Cooley that proximate cause must "be the legitimate sequence of the thing amiss. In other words, the law always refers the injury to the proximate, not the remote cause," and this definition was quoted with approval in the case of Paducah Traction Company v. Weitlauf, 176 Ky. 82. But this definition it must be conceded is not very clarifying since

it is about as difficult to determine what is "the legitimate sequence" as it is to determine the definition of "proximate cause." And so in the last case referred to this court quoted with approval from the case of Milwaukee & St. Paul R. R. Co. v. Kellogg, 94 U. S. 469, this excerpt:

"The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

Some courts deny that the injury in order to be the proximate result of the negligence "ought to have been foreseen in the light of the attending circumstances," as contained in the above quotation, but most of the courts, including our own, incorporate that element in the definition. The confusion seems to have grown out of the failure to distinguish between an injury directly produced by the negligence complained of and one which is indirectly or remotely produced. If the injury is the direct result of the alleged negligence the latter may be said in all cases to be the proximate cause of the injury, although it may not have been foreseen in the light of the attending circumstances. If, however, the injury is only the indirect or remote result of the alleged negligence then it must have been foreseen or anticipated in the light of the circumstances. L. & N. R. R. Co. v. Wright, 183 Ky. 634.

Further illustrating the position of this court with reference to the true scope and meaning of the term "proximate cause," in the case of Gosney v. L. & N. R. R. Co., 169 Ky. 323, quoting from Sydnor v. Arnold, 122 Ky. 562, we said:

"The weight of authority seems to be against holding a defendant liable for all the consequences of his

wrongful acts when they are such as no human being, even with the fullest knowledge of the circumstances, would have considered likely to occur, and the rule is well settled that to fix liability upon a person for remote negligence the injury complained of must be one that under all the circumstances might have been reasonably foreseen or anticipated by a person of ordinary prudence to flow from or be the natural and probable consequence of the first negligent or wrongful act. These views are fully supported and illustrated in the following authorities: Shearman & Redfield on Negligence, section 28; Southern Ry. Co. v. Webb (Ga.), 42 S. W. 395, 59 L. R. A. 109; Cole, v. German Savings & Loan Society, 124 Fed. 113, 59 C. C. A. 593, 63 L. R. A. 416; Bransom v. Labrot, 81 Ky. 638, 5 Ky. L. R. 827, 50 Am Rep. 193; Louisville Gas Co. v. Gutenkuntz, 82 Ky. 432, 6 Ky. L. R. 464; Davis v. Chicago, Milwaukee & St. Paul R. Co., 93 Wis. 470, 67 N. W. 16, 1132, 33 L. R. A. 654, 57 Am. St. Rep. 935; Wood v. Pennsylvania R. Co., 177 Pa. 306, 35 Atl. 699, 35 L. R. A. 199, 55 Am. St. Rep. 728; Dickson v. Omaha & St. L. Ry. Co. (Mo. Sup.), 27 S. W. 476, 25 L. R. A. 320, 46 Am. St. Rep. 429; Western Ry. v. Mutch (Ala.), 11 South 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Gonsales v. City of Galveston (Tex. Sup.), 19 S. W. 284, 31 Am. St. Rep.; Reid v. Evansville R. Co. (Ind. App.), 35 N. E. 703, 33 Am. St. Rep. 391; Huber v. LaCrosse City Ry. Co. (Wis.), 66 N. W. 708, 31 L. R. A. 583, 53 Am. St. Rep. 940; Burger v. Missouri Pacific Ry. Co. (Mo. Sup.), 20 S. W. 439, 34 Am. St. Rep. 379, Am. & Eng. Ency. of Law, vol. 16; Gilson v. Delaware & Hudson Canal Co. (Vt.), 26 Atl. 70, 36 Am. St. Rep. 802; Watson, Damages for Personal Injuries, sections 28, 58.''

Other cases bearing upon the question are Louisville Home Telephone Co. v. Gasper, 123 Ky. 128; City of Lawrenceburg v. Lay, 149 Ky. 490; Paducah Light & Power Co. v. Parkman's Admr., 156 Ky. 197; Stephens v. Stephens, 172 Ky. 780, and I. C. R. R. Co. v Skinner, 177 Ky. 62. All the authorities agree that the proximity in point of time or space does not enter into the case or become an element of the definition or affect the plaintiff's right to recover. Such matters are of no importance except as they may afford evidence for or against proximity of causation. Nor will the defendant be excused on the ground of remoteness of injury if his act, combined

with an intervening one for which he was not responsible, produced the injury, provided such intervening act alone would not have sufficed to produce the injury.

This qualification is stated in Sherman & Redfield on Negligence, section 39, in this language:

"It is also agreed that if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage."

Applying this definition together with the qualifications referred to we find that the act of defendant in both turning off and turning on the water upon the occasion complained of could not and as a matter of fact did not produce the injury complained of except for the independent, wrongful and negligent act of the tenant, Agee, in leaving the faucets in his apartment above plaintiff in such condition as to permit the overflow of plaintiff's premises and the consequent damage to her goods. This, as we have seen, was in itself a negligent act on the part of Agee and under the foregoing definition of proximate cause, as approved by this court, before defendant can be held liable for the damages sued for, he must have, in the exercise of ordinary prudence, anticipated, foreseen or contemplated the probability of the happening of such negligent act when he ordered and procured the water turned on the next morning, after turning it off the night before. We are convinced that he was not required to anticipate, or foresee any such thing. The safe, usual and natural condition in which the water pipes and faucets are maintained is for them to be kept closed so as to prevent damage almost certain to occur if they are left open, and we cannot conceive how it can be insisted that prudence requires one to anticipate and foresee, not only that another would or might act contrary to the usual and ordinary course, but that he in order to do so, would commit a positive act of negligence toward a third person resulting in the latter's injury, and but for which he would not have been injured. On the contrary, prudence would more likely foresee and anticipate that all persons will act so as to preserve the usual and safe conditions

and so as not to incur responsibility to another because of negligence. This being true, it results that the alleged acts of negligence of defendant cannot be said to be, under the facts of this case, the proximate cause of the damages sued for.

We therefore conclude that the court should have sustained defendant's motion for a peremptory instruction, and having failed to do so the judgment is reversed with directions to sustain the motion if the evidence upon another trial is substantially the same as upon the first one.