## Lewis v. Graves.
(Decided Feb. 11, 1936.)

JAMES CLAY for appellant.

MAURY KEMPER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER —Affirming.

Mrs. Leah Lewis instituted this action against T. J. Adkins & Co., Sam Graves, and F. M. Wheeler and Hobart Fannin, partners doing business under the firm name of Wheeler & Fannin, seeking to recover damages for personal injuries alleged to have been sustained by her as the result of the concurrent negligence of the defendants, their agents and servants, in the operation of their trucks. From a judgment in conformity with a directed verdict in favor of Sam Graves, plaintiff is appealing.

At the close of the evidence for plaintiff, the court sustained a motion for a peremptory instruction in favor of T. J. Adkins & Co., and at the close of all evidence, peremptorily instructed the jury in favor of Sam Graves, but submitted the case to the jury as to Wheeler & Fannin and the jury returned a verdict for plaintiff as against them in the sum of $370. The several defendants filed separate answers and in addition to a general denial of the alleged negligence pleaded contributory negligence upon the part of plaintiff.

The accident occurred on the Morehead and Sandy Hook highway near a bridge over Christy creek. Ap-

pellee had a number of trucks engaged in hauling stone from a quarry a short distance from this bridge, one of which was driven by Jim Moore. Mrs. Lewis was walking from her home on Christy creek to a post office. She came on to the highway at a mailbox near the end of the bridge toward Sandy Hook. She had crossed over the bridge a short distance, walking on the extreme right-hand side of the road where a ridge of ballast had been thrown up by a road scraper when she met a truck of appellee's driven by Jim Moore, her nephew. Shortly thereafter a truck of Wheeler & Fannin, driven by Hobart Fannin, and coming from toward Sandy Hook struck her, inflicting the injuries of which she complains.

As we understand the contention made by her counsel, the negligence of appellee upon which appellant relies is that the Graves truck was making such a loud and unusual noise that she could not hear the other truck approaching from the rear, and, further, that it was driven so far toward or over the center of the highway as to force the Wheeler & Fannin truck so far to the righthand side of the road, as they were traveling, that the driver could not, after passing appellee's truck, turn out in time to avoid striking appellant.

There is a sharp conflict in evidence as to where the trucks met and as to their relative courses with respect to the center of the highway. There is also much confusion in the evidence due to the fact that a map was used at the trial and witnesses would point out objects and locations on the map which is not found in the record. Appellant testified that when she met the Graves truck she was about 10 or 12 feet from the bridge; that she did not see or hear the other truck as it approached her. The Wheeler truck was loaded with 25 cross-ties and some produce and a man and his daughter were riding in the seat with Fannin and another man was on top of the ties. They all testified that the trucks met about the center of the bridge, which was 32 feet in length and approximately 19 feet in width; and the Graves truck was so far over toward the side of the road their truck had barely room to pass between it and the rail of the bridge. In these statements they were corroborated by two or three witnesses who viewed the accident from a distance. Jim

Moore testified that he met the Wheele. & Fannin truck at the mailbox above referred to, which, it appears, is 10 or 15 feet from the end of the bridge toward Sandy Hook, and in this he is corroborated by witnesses who also viewed the accident from a distance. There is some evidence concerning the speed at which the Graves truck was traveling, but that is immaterial, since its speed could in no way have contributed to appellant's injuries. Fannin testified that after his truck cleared the other truck he was in such close proximity to appellant that in order to avoid striking her he swerved to the left and the rear end of the truck skidded around and struck her. Most of the witnesses who saw the accident testified that she was struck by the side of the truck; however, one witness who was on a prominence ahead of the truck, testified that she was struck by the front end. Witnesses who saw the accident and who were present when measurements were made testified that Mrs. Lewis was 39 feet from the bridge when the truck struck her. From the direction in which the Wheeler & Fannin truck was approaching the bridge there was a down grade and a slight curve for some distance. In approaching the bridge, Fannin saw Mrs. Lewis crossing the bridge and sounded his horn when he was somewhere from 150 to 300 feet back and again, according to his evidence and that of a number of witnesses, when he neared the bridge. He testified that he was going 20 or 25 miles an hour, but a number of witnesses testified that the speed of the truck was much greater, some of them putting it at 40 or 50 miles per hour.

Taking into consideration all this evidence and the proven facts and conditions, it is apparent that in the circumstances he was driving the truck at an excessive and dangerous rate of speed. Assuming that the trucks met in the center of the bridge and that the Graves truck was so near or over the center of the road as to barely allow the other truck to pass between it and the bannister of the bridge, it is yet quite apparent that if Fannin had been properly operating his truck he might easily have avoided striking Mrs. Lewis. The evidence clearly discloses as the jury concluded that he was not exercising ordinary care in the operation of his truck, and it is equally manifest that his failure to exercise that degree of care required by law was the

direct and proximate cause of appellant's injuries. Since it is apparent from the evidence and from all natural and reasonable inferences that might be drawn therefrom that the alleged negligence upon the part of the driver of appellee's truck in no way contributed to the injuries of appellant, it was a question for the court and not for the jury, and the action of the court in directing a verdict for appellee was therefore proper. Collett's Guardian v. Standard Oil Co., 186 Ky. 142, 216 S. W. 356; Home Insurance Co. v. C., N. O. & T. P. Ry. Co., 182 Ky. 778, 207 S. W. 487; Paducah Traction Co. v. Weitlauf, 176 Ky. 82, 195 S. W. 99, L. R. A. 1917F, 353.

Judgment affirmed.