## Maise v. Imperial Oil Co. et al. (two cases).

Feb. 27, 1940.

W. C. Jonson, Judge.

W. H. Barnes, E. S. Howard and C. E. Smith for appellants.

A. D. Kirk, Geo. S. Wilson, Jr., and Otto C. Martin for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing in part and affirming in part.

By their separate actions seeking to recover damages for personal injuries growing out of the same accident alleged to have been caused by the negligence of the Imperial Oil Company, hereinafter referred to as the oil company, and E. J. Carter, the court at the close of the evidence for plaintiffs peremptorily instructed the jury to find for the defendants and from judgment pursuant to the directed verdict each plaintiff has prosecuted an appeal. The cases having been tried together in the court below, appealed and considered here on the same transcript of evidence will be disposed of in one opinion.

The facts out of which the litigation grew are that appellee Carter owns a house and lot in the town of Rosine in Ohio county on the north side of highway 62. The front part of the building is used by him as a general store and the other portion as a residence for himself and family. In January 1936, Joe Fiorella, doing business in the name of the Imperial Oil Company, installed upon the lot a gasoline filling station consisting

of a buried storage tank with the usual equipment. This filling station was installed under a contract between appellees wherein it was agreed that Carter would handle and sell products of the oil company exclusively. On the lot was an old hand dug well walled with stone.

In the early fall of 1937 the water which had previously been good for drinking purposes and general use in some way became contaminated and unfit for drinking purposes. On September 7, 1937, appellee employed a boy named Basham to go into the well for the purpose of cleaning it out. The boy had been in the well only a short time when he called for help. In order to rescue him one man was lowered into the well but when he was let down about half the depth of the well he called to those who were letting him down with a rope to bring him out which they did. The rope was placed around another man who was let down and rescued the boy who was unconscious or practically so. The evidence indicates beyond doubt that there was some character of noxious gas in the well which overcame the boy and affected those who went into the well to rescue him.

As appears from the record this well was approximately 60 feet from the gasoline tank and pump of the filling station. Shortly after dark that evening appellants went to Mr. Carter's store to do some shopping for their mother and later Vernon Hoheimer came in. After some talk about the well, Carter, Hoheimer and appellants went out to it and drew up a bucket of the water. They applied matches and burning bundles of papers to it to see if the liquid or any vapor arising from it would take fire, but the matches and torches were extinguished when applied to the liquid. After this experiment and while appellants and Hoheimer who had a flashlight were looking down into the well, appellee Carter dropped a lighted match into the well and this was followed by a terrific explosion which broke the concrete slab covering the top of the well and threw all those present several feet back. Fortunately none of them suffered anything more serious than burns, bruises and shock.

It is alleged in the petitions in effect that appellees were negligent in that the tank was defective and patched and the connection with the pump so faulty in construction that gasoline leaked into the soil and per-

colated into the well; that appellees knew or by the exercise of ordinary care could have known that the leaking gasoline would percolate into the well; that appellee Carter knew or by the exercise of ordinary care could have known of the presence of the combustible gas in the well when he dropped the lighted match into it and that appellants did not know of these conditions. By separate answers appellees traversed the allegations of the petitions and among other affirmative defenses pleaded contributory negligence upon the part of appellants.

The evidence of appellants and others present is to the effect that while in the store and immediately before making the investigation in the well Carter said that he would give $10 to anybody to find out who poured gas, coal oil or whatever it was in the well and proposed that he and the others go and examine the well. There is evidence that there was a black scum on the water and various witnesses testified that it had the odor of engine oil or gasoline. There is evidence that a connection in the pipes leading from the gasoline tank to the pump was defective and that there was a dripping of gasoline from that joint. There was some attempt to show that the tank was old and patched but there was no positive evidence that there was any leak in the tank. Some witnesses who were present when the tank was taken out after the accident stated that there were some puddles of gasoline in the excavation.

So far as appellee the oil company is concerned it is manifest that a directed verdict was proper. There is no positive evidence that there was gasoline in the well, nor is the evidence sufficient to form a basis for a reasonable inference that gasoline leaking from the tank or equipment connected with it had percolated into the well and a finding that such was the case would necessarily have been based on pure speculation and surmise. Furthermore, it is to be doubted, if such percolation be admitted, whether any negligence of the oil company was the proximate cause of appellants' injuries. See Nunan v. Bennett, 184 Ky. 591, 212 S. W. 570; Riley v. L. & N. R. Co., 231 Ky. 564, 21 S. W. (2d) 990; Louisville & N. R. Co. v. Napier, 223 Ky. 417, 3 S. W. (2d) 1070, 64 A. L. R. 513. In the Nunan opinion there is an extensive discussion of proximate cause and a

citation of numerous authorities dealing with that subject but it is unnecessary to go into further discussion of that phase of the case since we have concluded that there was not sufficient evidence of substantive or probative character to establish or to give rise to an inference that there was gasoline in the well or a seepage of gasoline from the gas tank or equipment into it.

Wholly apart from evidence as to the presence of gasoline in the well appellee Carter knew that the boy whom he had employed to clean the well had been overcome by some sort of gas or bad air and that the men who went into the well to rescue him were also affected by it. It is a matter of common knowledge that natural gas which is found in considerable quantities in Ohio county and sewer gas and other gases that collect in wells, sewers, etc., are combustible. If appellee Carter knew or had reasonable grounds to anticipate or suspect there was combustible or explosive gas or substances in the well he would or should have known and appreciated the danger of dropping a lighted match into it. Negligence is the failure to do what a reasonably prudent person would do under the same circumstances. Chesapeake & Ohio R. Co. v. Craig, 229 Ky. 365, 17 S. W. (2d) 224.

However, it is argued by appellees that appellants voluntarily and with knowledge of conditions entered into the joint venture that resulted in their injuries and therefore assumed the risk incident thereto. The authorities cited to support that contention would be applicable if appellants knew or had reason to suspect the presence of combustible or explosive gas in the well and that a lighted match or fire brand was going to be dropped into it and with that knowledge voluntarily exposed themselves to any risk or danger incident thereto. Appellants and Hoheimer testified that they were looking into the well by the aid of a flashlight in the hands of the latter and that they did not know that appellee Carter was going to drop a lighted match into the well, although it might be inferred from some of their evidence that they knew or anticipated that he would do so, since some of them testified that he held the lighted match over the well until it had burned about half way, then dropped it into the well.

We conclude that the court erred in sustaining ap-

pellee Carter's motion for a peremptory instruction and that as to him the case should have gone to the jury on the question of negligence, contributory negligence, etc.

Appellants complain that it was error on the part of the lower court to refuse to admit evidence of the witness Junior Taylor heard out of the presence of the jury concerning the condition of the well of his mother on property across the road from appellee Carter's lot, but in the circumstances it is clearly manifest that such evidence was properly excluded.

What we have said concerning grounds discussed renders consideration of any other grounds unnecessary.

Wherefore the judgments are affirmed as to the Imperial Oil Company and reversed as to appellee Carter for a new trial and proceedings in conformity with this opinion.