**Frank GREER, Appellant,**

v.

**Roy CURRY, Appellee.**

Court of Appeals of Kentucky.

Dec. 12, 1969.

Davis Williams, Munfordville, for appellant.

Joseph R. Huddleston, Huddleston & Huddleston, Bowling Green, for appellee.

WADDILL, Commissioner.

Roy Curry, a farmhand, brought this action against his employer, Frank Greer, to recover damages for personal injuries he allegedly sustained while performing a farm task at Greer's direction. Curry recovered a verdict and judgment for $2,382.-00 and we have granted Greer an appeal. The grounds urged for reversal are, in summary: (1) failure to establish negligence and (2) that the patent incredibility of Curry's testimony concerning the cause of his injuries renders it without probative value.

Appellant, Greer, the owner and operator of a farm, employed appellee, Curry, to assist Greer's farmhands to fill Greer's forty-foot-tall silo with chopped green corn and cane. When Curry reported for work on his second day of employment with Greer, Curry claims Greer requested him to climb a ladder affixed to the outside of Greer's silo to ascertain how much silage was in it. Curry testified that, after he had reached the top rung of the ladder and while he was looking into the silo to observe the silage they had loaded into it the previous day, he inhaled "something" that caused an immediate burning sensation in his chest. However, he was able to descend the ladder unassisted and resume his farm work.

Later that day Curry became violently ill, had difficulty in breathing and expelled a green mucus substance. He then was taken to his home and subsequently hospitalized for forty-two days. For several months thereafter he could only perform light work. He had had no previous medical history.

Curry was treated by several physicians, one of whom performed a partial lobectomy upon him. Doctor K. M. Hill, who had also treated Curry, was of the opinion that the silage in Greer's silo had produced nitrogen dioxide, a poisonous gas commonly known as silo gas, which had caused Curry's injuries.

On this appeal Greer urges that Curry's claim that his injuries were caused by placing his head momentarily in the silo is so much at variance with the natural laws of nature that it is incredible. In this connection Greer contends that cut corn and

cane (silage) will not ferment and produce a poisonous gas in a period of twenty-four hours or less; that it would take several days in hot weather for silage to begin to ferment in such a way that it would give off any kind of gas or fumes. Greer also points out that, after Curry had allegedly taken a whiff of the silo gas, two of the other farm workers climbed inside the silo without injury. They testified that they did not smell any gas although they worked inside the silo for approximately three hours. There was, however, a dispute concerning whether the silo had been ventilated between the time Curry had looked into it and when the other farm workers had entered it.

Greer and Sam Crain, both of whom had had much experience in filling silos, testified they had never heard of a farmhand being injured by merely looking into a silo which was partially filled with silage. Hence, Greer contends that he could not reasonably foresee any danger of injury that would result to Curry and, therefore, he was not guilty of any negligence.

On the other side of the case Curry contends that, since Greer was not only an experienced farmer but had worked in a distillery where he had had an opportunity to observe grain fermenting, a process not unlike the one that produces silage gas, Greer could reasonably foresee the danger involved in sending Curry to inspect the silo. Therefore it is argued that, since Greer had knowledge superior to that of Curry, it was the former's duty to warn the latter of the probable danger that harmful gas had accumulated in the silo.

In American Jurisprudence, Vol. 38, Negligence, Section 23, pp. 665–666, the subject of foreseeability of risk is discussed in this fashion:

"Fundamentally, the duty of a person to use care and his liability for negligence depend upon the tendency of his acts under the circumstances as they are known or should be known to him. The foundation of liability for negligence is knowledge—or what is deemed in law to be the same thing: opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury. Concisely stated, negligence presupposes a duty of taking care, and this in turn presupposes knowledge or its equivalent. A man cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that he had knowledge or reasonably was chargeable with knowledge that the act or omission involved danger to another. One who seeks redress at law does not make out a cause of action by showing, without more, that there has been damage to his person, but, if the harm was not wilful, he must show that the act, as to him, had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it, although the harm was unintended. The foregoing principles, which emphasize knowledge, actual or implied, as the foundation of the duty to use due care, are adhered to generally by the authorities. Fault on the part of the defendant is to be found in action or nonaction accompanied by knowledge, actual or implied of the probable results of his conduct. * * *. Even such an act as throwing candy from a float in a parade, innocent in itself, may be negligent in respect of persons upon the street, where it is committed with knowledge that it causes a commotion and jostling among the viewers of the parade, which is dangerous to them or other persons on the street. On the other hand, an injury is not actionable if it was not foreseen, or could not have been foreseen or reasonably anticipated. * * *."

And again in the same source, 38 American Jurisprudence, Negligence, Section 24, pp. 669–670, it is written:

"* * *. Generally speaking, no one is bound to guard against or take measures to avert that which, under the circumstances, a reasonably prudent person

would not anticipate as likely to happen. Mischief which could by no reasonable possibility have been foreseen, and which no reasonable person would have anticipated, cannot be taken into account as a basis upon which to predicate a wrong. Negligence must be determined upon the facts as they appeared at the time, and not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man. Even where the highest degree of care is demanded, still, the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. If a thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given case it would do damage, a person who did not foresee it and who had no warning would not be held liable for the harm. If men were held answerable for everything they did which was dangerous in fact, they would be held for all their acts from which harm in fact ensued. Accordingly, in order to impute knowledge of a dangerous thing or place, the danger therefrom must have been such as is recognized by common experience or by the special experience of the actor, or such as might reasonably have been expected by a person of ordinary prudence and of ordinary foresight. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care. * * *."

Also see Paducah Battery Co. v. Edgar, Ky., 265 S.W.2d 455; Nunan v. Bennett, 184 Ky. 591, 212 S.W. 570; Restatement, Second, Torts, Section 435, pp. 449–455; Prosser on Torts, 3rd Edition, Section 50, pp. 288–309.

In light of these authorities we find no basis in the instant case for charging Greer with reasonable foreseeability of any injury as a result of his act of merely sending Curry to look into the silo to ascertain the amount of silage it would hold. Therefore, we hold that Greer's conduct was reasonable and that there was no negligence on his part. We conclude that the trial court should have sustained Greer's motion for a directed verdict. This conclusion makes it unnecessary for us to further discuss the question of the credibility of Curry's testimony.

The judgment is reversed with directions to enter judgment n. o. v. in favor of appellant Greer.

OSBORNE, STEINFELD, REED and NEIKIRK, JJ., concur.